Strafford,
Jan. 5, 1937.

MERLIN H. CANNEY *v.* MASSACHUSETTS BONDING & INSURANCE CO.

*Cooper & Hall* (*Mr. Hall* orally), for the plaintiff.

*Hughes & Burns* (*Mr. Burns* orally), for the defendant.

MARBLE, J. On January 29, 1931, the defendant, through its agent in Malden, Massachusetts, issued to the plaintiff, then living in Malden, two policies of insurance, one an accident and health policy, the other the policy in suit. Four days later the plaintiff received a bullet wound in his left forearm. He was confined to the hospital for a week or more and then came to his father's home in Farmington in this state. Soon afterward a tumor began to form at his elbow joint. This necessitated an operation, the effect of which was to diminish the supply of blood to the arm. He testified that his arm was useless after the operation, that it was swollen and discolored and gave him excruciating pain. Until June 5, 1934, he wore a brace or splint to keep his wrist from dropping. On that date, his physicians, having decided that amputation was necessary, removed the arm a few inches above the elbow.

On May 28, 1931, the plaintiff, in consideration of the sum of three hundred dollars, released the defendant from all liability under the accident and health policy. In his proof of injury he stated that he had been *totally and absolutely disabled* from February 2, 1931, to February 12, 1931, continuously confined in the hospital from April 2, 1931, to April 10, 1931, and partially disabled from February 12, 1931, to the date of the release.

By the terms of the death and dismemberment policy the defendant insured the plaintiff against bodily injuries sustained through accidental means "If such injuries shall wholly and continuously disable the Insured from date of accident from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous disability, and within two hundred weeks

from date of the accident shall result independently and exclusively of all other causes" in any one of certain enumerated losses; or, "if within ninety days of the date of the accident, irrespective of total disability, such injuries alone shall" so result. Among the losses enumerated is the loss of "Either arm by severance at or above the elbow."

The statements concerning disability made by the plaintiff in the proof above referred to were answers to printed questions prepared by the defendant. These questions were to be answered "according to the definitions on back hereof." The back of the document comprises the attending surgeon's statement, in which certain questions are asked regarding the plaintiff's ability to transact business and to perform certain important duties. No definitions as such are printed thereon.

The plaintiff did not expressly state that he was able to perform either wholly or partially any of his customary duties, and in point of fact he did no work of any kind until a year and a half later. His statement as to partial disability was made in connection with the accident and health policy, but even if it had been made in the present action it would be open to explanation. *Giroux* v. *Insurance Co.*, 85 N. H. 355, 356; 5 Joyce, Insurance (2d *ed.*), *p.* 5520.

The first question for consideration consequently is whether the evidence warrants a finding that the plaintiff was, during the stipulated period, "wholly and continuously" disabled "from performing any and every duty pertaining to his occupation" as that language is construed by the law of Massachusetts, which is conceded to govern the interpretation of the insurance contract.

At the time the plaintiff received his injury he was a traveling salesman in the employ of his father, who was the local representative of numerous enterprises. The plaintiff solicited orders for bombshell torches, traffic signs, and stationery supplies. He traveled by automobile, and the territory assigned him comprised New Hampshire, Massachusetts, and part of Vermont. His duties required him to carry a brief case, various manuals, a sample torch weighing four or five pounds, and sample traffic signs weighing twelve pounds or more. After his accident he could not drive a car as he had previously driven it, and he did not attempt to do the work he had formerly done. "When the policy speaks of a disability which prevents the insured from carrying on 'his occupation,' the reference is clearly to his usual occupation at the time of the disability." *Metropolitan Life Insurance Co.* v. *Foster*, 67 Fed. (2d), 264, 265.

Early in 1933 the plaintiff obtained a position with the Sun Life Insurance Company in Philadelphia but worked only two months and was able to earn only forty dollars in that time. He described the work he was able to perform for this company as follows: "I'd go to the office in the morning if I were able to get there, if not, when I could I went out canvassing. If my condition would allow me to continue canvassing for the day or part of the day I did so. If not I returned to my home. I found the larger part of the time that I was unable to work . . . due to the pain . . . which I had and through the lack of sleep . . . I hardly had strength enough to keep going."

He next became an agent for a hosiery company. After receiving instruction in salesmanship from this company he began to solicit orders in New Hampshire but was unable "to put in the hours" required. He worked about a month, without salary, for a firm of automobile dealers in Rochester in their showroom. He testified in regard to this work: "Well I worked when I possibly could which was not a whole lot . . . . I'd leave my home at quarter of eight to get there and I might be beside the road somewhere for half an hour or possibly an hour applying pressure to my arm to relieve the intense pain and swelling so that I could go along without taking any chances of wrecking myself."

A fellow employee testified: "He'd come in and stay around a few minutes, then he would go out and we wouldn't see him probably for a day or so . . . seemed to me he was suffering quite a lot with his arm . . . I have several times taken hold of it and straighten[ed] it out for him . . . he was suffering quite a good deal because sweat would stand right out on his face."

In 1934 the plaintiff sold a little accident and health insurance on commission, but his commissions did not exceed twenty dollars. He also worked a short time in the evening for a few weeks in a shoe factory at Farmington sorting shoes at three cents a case. He declared that during the entire period which intervened between his accident and the amputation of his arm he was able to earn less than one hundred dollars. It could be found on the evidence that, because of his injury, he was unable to perform with any substantiality work much less arduous than that which he was performing at the time of the accident.

He summarized his activities as follows: "I worked for the, started to work for the Sun Life Insurance Company . . . . I worked for them two months. Then I came back to New Hampshire again and I worked for Murdock & Arthur during the automobile show on the

floor for about a month. With those exceptions, that is practically everything I've done and all I've done since the accident." He also declared that, as time went on, the swelling and discoloration of his arm increased.

There was medical testimony to the effect that as early as October, 1932, his general physical condition was poor, that he was thirty-five pounds under weight, that his face was drawn, that his forearm was blue and cold and the muscles a half inch smaller than those of the other arm, that there was no pulsation in the radial artery, and that his pain was of the neuralgia type, "a very severe excruciating pain characterized by paroxysms." In the opinion of the physicians such pain as that suffered by the plaintiff would seriously affect a person's capacity to apply himself to his usual tasks.

Provisions in insurance policies relating to total disability are not usually interpreted literally. This is the rule in this jurisdiction (*Duhaime* v. *Insurance Co.*, 86 N. H. 307; *Thayer* v. *Insurance Co.*, 68 N. H. 577) and in Massachusetts (*Rezendes* v. *Insurance Co.*, 285 Mass. 505; *Adamaitis* v. *Insurance Co.* (Mass.), 3 N. E. Rep. (2d), 833, 836, where *Duhaime* v. *Insurance Co.*, *supra*, is cited with approval).

If the plaintiff's testimony is true, the work which he was able to perform was of a "merely trifling character." See *Adamaitis* v. *Insurance Co.*, *supra*. "So far as concerns totality of disability complete physical or mental incapacity is not necessary." *Rezendes* v. *Insurance Co.*, *supra*, 510. The plaintiff was "wholly and continuously" disabled "from performing any and every kind of duty pertaining to his occupation" if he was at no time after the accident able to perform any of those duties substantially. *Adamaitis* v. *Insurance Co.*, *supra*. That he was thus incapacitated is an inference which may reasonably be drawn from the evidence.

The defendant's contention that the plaintiff failed to comply with the provisions of the policy relating to notice and proof of loss requires brief discussion. The two policies which the plaintiff obtained were issued by the same company at the same time and by the same agent. As a practical matter they constituted a single transaction. A written notice of the accident signed by the plaintiff and referring specifically to the accident and health policy was received by the defendant on February 10, 1931, and several payments accruing under that policy were made before final adjustment. If the plaintiff in this notice had referred to each policy by number, as the defendant claims he should have done, the defendant would have had no additional information concerning the plaintiff's injury.

The provision requiring notice is the standard provision that "Written notice of the injury on which the claim may be based" must be "given to the company within twenty days after the date of the accident causing the injury." There is a further provision that such notice given to an authorized agent of the company "with particulars sufficient to identify the insured" shall be deemed to be notice to the company. Under the circumstances we are of the opinion that the notice in question was a notice to the defendant as insurer not only under the accident and health policy but under the policy in suit. Moreover it could be found that the defendant so considered it. On May 14, 1934, plaintiff's counsel wrote the defendant for information regarding the death and dismemberment policy, stating that the plaintiff was about to have his arm amputated and asking the defendant to take up with them "the question of whether or not there is any liability under the policy." Answering this letter under the number of the death and dismemberment policy, the defendant wrote: "The facts in this case indicate that Mr. Canney received an injury through accidental means on or about February first, 1931." Liability is then denied, not on the ground that formal written notice of the injury had not been given, but on the ground that ninety days (the period within which recovery could be had irrespective of total disability) had elapsed since the accident.

After the plaintiff's arm had been removed counsel informed the defendant of this fact by letter and requested forms for filing proofs of loss. The defendant ignored this request and merely referred counsel to its earlier letter denying liability. In this situation the plaintiff was not obliged to file formal proofs or to postpone suit until the end of the stipulated sixty-day period. *Seely* v. *Insurance Co.*, 72 N. H. 49, 54; *Whitten* v. *Insurance Co.*, 165 Mass. 343, 345.

Evidence relating to the condition of the plaintiff's arm and to the amount of money he was able to earn had some legitimate tendency to prove the extent of his disability. It was therefore admissible. *Newick* v. *Eastham*, 80 N. H. 11, and cases cited.

The plaintiff's exception to the granting of the defendant's motion for a nonsuit is sustained.

*New trial.*

PAGE, J., was absent: the others concurred.