## MANGOL v. METROPOLITAN LIFE INS. CO.
### No. 6754.

Circuit Court of Appeals, Seventh Circuit.
March 27, 1939.

Nathaniel Rubinkam and William S. Allen, both of Chicago, Ill. (James C. Rich, of Chicago, Ill., of counsel), for appellant.

George J. Haddad and William A. Murphy, both of Chicago, Ill., for appellee.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

TREANOR, Circuit Judge.

Defendant Metropolitan Life Insurance Company prosecuted this appeal from a judgment for the plaintiff in an action brought to recover the face amount of an accident policy issued by the defendant company. There was a trial to the court without a jury upon an agreed statement of facts. The sole question on appeal relating to the merits of plaintiff's claim is whether it falls within the following narrow exception to a general disclaimer of coverage:[1]

"* * * (excepting only septic infection of and through a visible wound caused directly and independently of all other causes by violent and accidental means)."

The evidence discloses that the insured extracted a hair, or hairs, from the inside of his nose with a pair of tweezers. There was some bleeding from the nostril and the insured applied iodine thereto and put some cotton in his nose. On the following day the insured's nose and face, in the region of his nose, were swollen; and two days later a physician was called who diagnosed the case as erysipelas. Later the insured was taken to a hospital where he died the following morning.

The agreed statement of facts includes the following:

"Based upon reasonable medical certainty, the following facts are known concerning erysipelas. It is a septic infection and it is believed in medical circles that infection takes place always because of some break in the skin or mucous membranes, such as a wound, an abrasion, or a scratch. The period of incubation varies between several hours and a few days depending on the virility of the germ and manner in which it entered the system. A pulling of the hair or hairs out of the nostril accompanied by a slight hemorrhage would produce an opening in the skin or mucous membrane which would be visible. Based upon the facts heretofore stated and based on reasonable medical certainty, the erysipelas of which the insured died might or could have been caused by the germ entering the system through the opening of the skin or other lesion caused by the act of the insured by the pulling of the hair or hairs out of his nose as stated above.

"That the terminal broncho-pneumonia is a condition known medically as an end result and usually follows a disease of the character of erysipelas due to the lowered resistance of the patient suffering from erysipelas and in this case did follow the erysipelas."

The trial court entered the following finding of fact: "The court finds that the insured, Nick Mangol, died, on April 25, 1936, from a septic infection of and through a visible wound caused directly and independently of all other causes by violent and accidental means on April 21, 1936."

The evidence was sufficient to support a finding that insured died from a septic infection of and through a visible wound caused directly and independently of all other means by the deceased's plucking a hair, or hairs, from his nose with the tweezers. But appellant contends that the wound was not caused by accidental means within the meaning of the exception of clause 9. In the words of defendant "the facts show conclusively that the wound was not caused by accidental means, but was voluntarily caused by the insured." Defendant's position is clearly indicated by its seventh finding of fact which it submitted to the court and which is as follows: "The Court finds that the opening in the skin through which the infection entered the body of Nick Mangol was the result of an intentional act by said Nick Mangol."

In support of its contention that the visible wound was the result of "an intentional act" by the deceased, defendant cites and relies upon cases which purport to distinguish between accidental means and accidental result and which assert that there can be an accidental result effected by non-accidental means. The substance of the reasoning of these cases seems to be that a wholly unforeseen and unexpected

---

[1] (clause 9 of Insurance Policy) "This insurance shall not cover * * * death or any other loss caused wholly or partly, directly or indirectly, by disease or bodily or mental infirmity * * * nor shall it cover injury, disability, death or any other result caused wholly or partly, directly or indirectly, by ptomaines or disease germs or any kind of infection, whether introduced or contracted accidently or otherwise (excepting * * *"

result, which by common understanding is an accidental result, properly can be said to be effected by non-accidental means if the "means" takes the form of a voluntary act, even though the actor had no intention of causing the result which is admittedly accidental in the sense that it was not anticipated and was not the usual and probable result of the intended act.

On the other hand, in support of the proposition that "the facts show conclusively that the accident was not caused by accidental means but was voluntarily caused by the insured," defendant argues that deceased knew that "extracting a hair from the nose or any place always may cause a wound"; and that he "certainly knew or should have known that such wound may be a serious one"; and that "he therefore extracted a hair from his nose with full knowledge of the possible consequences." The foregoing argument is in essence an application of the well known rule that a person is presumed to intend the natural and probable consequences of his acts. If a visible wound had been the natural and probable consequence of deceased's act of plucking a hair, or hairs, from his nose, then there would have been at least a presumption that he intended to produce such wound. The agreed statement of facts recites that "a pulling of the hair or hairs out of a nostril accompanied by a slight hemorrhage would produce an opening in the skin or mucous membrane which would be visible." The foregoing does not, and is not intended to, state as a fact that a hemorrhage or visible wound would naturally and probably accompany, or result from, the plucking of a hair, or hairs, from the nostril. The agreed statement of facts furnishes no basis either for an inference of fact or a presumption that the deceased intended to produce the visible wound which the District Court was clearly justified in finding did result from the deceased's act of plucking the hair, or hairs, from his nose.

In view of the foregoing our question reduces to this: If an act is performed with the intention of accomplishing a certain result, and if in the attempt to accomplish that result, another result, unintended and unexpected and not the natural and probable consequence of the intended act, in fact occurs, must it be said, as a matter of law, that the unintended result was not effected by "accidental means" within the meaning of the policy exception?

This Court had occasion to consider the foregoing question in New York Life Ins. Co. v. Kassly.[2] The facts of that case are not distinguishable from the facts of the instant case. It is true that the wording of the pertinent provisions of the policy of the Kassly case and of the policy in the instant case is not the same, but in the course of the opinion in the Kassly case this Court demonstrated the impossibility of rationally distinguishing between "accidental means" and "accidental results," and approved the doctrine "that an effect which cannot be reasonably anticipated from use of means producing it by one not intending to produce such effect is caused by accidental means within the terms of an accident policy which limits liability to death from accidental means."

Our question is whether the visible wound was caused by accidental means, and its answer involves the factual analysis and reasoning of the Kassly opinion. Under the doctrine of Erie R. Co. v. Tompkins,[3] the Kassly case is not a direct authority for decision in the instant case in which we must apply the law of Illinois. But the discussion of the relation between "accidental means" and "accidental injury" in the opinion of the Kassly case is especially helpful in our analysis of the decisions of the Supreme and Appellate courts of Illinois since they have recognized as sound the same reasoning which is found in the opinion in the Kassly case.

In Vollrath v. Central Life Insurance Company of Illinois[4] death was caused by paralysis of the respiratory organs, resulting from the administration of ether in preparation for an operation to remove the tonsils of deceased, who apparently was in suitable condition for such an operation. The deceased submitted voluntarily to the anesthetic and the means employed were those usually and customarily adopted by reputable physicians. The Appellate Court held that death resulted from accidental means within the terms of a double indemnity clause of a policy of life insurance, and repudiated, as a divergence from the law of Illinois, the doctrine ex-

---

[2] 7 Cir., 87 F.2d 236, 240.
[3] 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

[4] 243 Ill.App. 181.

pressed in the following statement: "If the means which cause an injury are voluntarily employed in the usual and expected way, the resulting injury is not produced by accidental means within the meaning of an accident insurance policy, even though it was entirely unusual, unexpected, and unforeseen."

In Schleicher v. General Accident, Fire & Life Assurance Corporation[5] the court made the following statement: "Notwithstanding what some of the other courts have said concerning cases involving the same question, we are of the opinion the courts of Illinois are committed to the rule announced in 4 Cooley's Briefs on Insurance 3156: 'An effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by "accidental means." '"

In Paoli v. Loyal Protection Insurance Company[6] the insured sustained strain by lifting a sack of cement which caused bursting of a blood vessel in his brain. The Appellate Court held that the evidence warranted a verdict that the insured came to his death by accidental means. The court relied especially on United States Mutual Accident Ass'n v. Barry[7] and approved the following excerpt from the Barry case: " * * * that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means."

In the case of Higgins v. Midland Casualty Company[8] the court stated that the chief question in dispute was "whether the sunstroke was the result of 'accidental means,' as that term is used in the policy." And the court further stated that counsel for appellee was insisting that if the insured "suffered the sunstroke when and while he was doing just what he intended to do and in the way he intended, such sunstroke is not sustained through accidental means." The court quoted with approval: "The 'proper and true test, in all instances of voluntary action, is that defined in the Barry Case. If in the act which precedes the injury, though an intentional act, something unforeseen, unexpected and unusual occurs, which produces the injury, it is accidentally caused." Quoted by Ill. Supreme Court from Bryant v. Continental Casualty Company, 107 Tex. 582, 182 S.W. 673, L.R.A.1916E, 945, Ann.Cas.1918A, 517.

Defendant urges that the Vollrath and Schleicher cases, supra, have been nullified and in fact overruled by Ebbert v. Metropolitan Life Ins. Co.[9] There are statements in the opinion of the Appellate Court in the Ebbert case which seem to be in conflict with the statements and reasoning of the Appellate Court in the Vollrath case. But the opinion and decision of the Supreme Court of Illinois in the Ebbert case cannot be said to affect the reasoning and holding of the Vollrath case in respect to the point of "accidental means." Such must be the conclusion from the following statement in the opinion: "The Appellate Court reversed the judgment in the present case on two grounds. The first was, that if the death was caused by the ether wholly and independently of all other causes, this was not a death by 'accidental means.' The second ground was that other diseases or bodily infirmities had contributed to the death. In the view we take of the case the question of the correctness of the first ground does not arise."

The Appellate Court's opinion in the Ebbert case contains no criticism of the doctrine of the Vollrath and Schleicher cases and does not discuss the facts of either of the earlier cases. If the Appellate Court thought the facts in the Ebbert case distinguishable, the finding that the injury was not caused by "accidental means" could not be given the effect of overruling the doctrine of the earlier cases. In determining the law of a state, federal courts do not review decisions of its courts for error of law or fact, and if a line of decisions clearly establishes a

5 240 Ill.App. 247.
6 289 Ill.App. 87, 6 N.E.2d 909, 912.
7 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60.
8 281 Ill. 431, 118 N.E. 11.
9 289 Ill.App. 342, 7 N.E.2d 336; Id., 369 Ill. 306, 16 N.E.2d 749, 751.

**18**

rule of law which has been approved by the court of last resort of a state, such rule must be recognized until it clearly appears that it has been overruled by the court of last resort.

We conclude ·that under the law of Illinois the agreed statement of facts justified a finding that there was a visible wound caused directly and independently of all other causes by violent and accidental means. In the words of the Barry case, supra, quoted and relied upon by the Illinois Supreme and Appellate Courts, it was for the trial court to determine whether "in the act which precedes the injury something unforeseen, unexpected [or] unusual, occurs, which produces the injury," [131 U.S. 100, 9 S.Ct. 759] the injury in the instant case being the visible wound in the nostril.

Defendant assigns as error the action of the trial court in striking paragraph 3 of the answer of the defendant which averred failure of the plaintiff to perform conditions of the policy relating to notice. It is defendant's contention that a provision of the policy which requires that "written notice of injury on which claim may be based must be given to the company within twenty days after the accident causing such injury" was not complied with.

The court sustained plaintiff's motion to strike paragraph 3 of defendant's answer on the ground that the paragraph did not state a good and sufficient defense. The plaintiff supports the action of the trial court on the ground that "injury" as used in paragraph four of the policy is limited to a non-fatal injury and, consequently, that paragraph 4 does not require the giving of a written notice where the claim under the policy is based on the loss of life of the insured. Plaintiff also urges that sufficient notice was given the defendant company within the 20 day period if it be assumed that the word "injury." is broad enough to include death of the insured. The information which plaintiff claims was sufficient notice was furnished in connection with the proofs of death submitted by the plaintiff in connection with her claim on other policies. In this proof of death the defendant was informed that the immediate cause of Mangol's death was "erysipelas terminal broncho pneumonia," and that the deceased also was insured under the accident policy in suit.

Clearly paragraph 4 does not require the notice of injury to include any of the details of the accident causing the injury. The foregoing written information, given within 20 days of the accident, complied with notice requirements which are in substance that a notice of injury given by or in behalf of the insured or beneficiary "with particulars sufficient to identify the insured shall be deemed to be notice to the company."[10]

Also there is merit in plaintiff's contention that the word "injury" as used in paragraph 4 must be held to mean a "bodily harm" that does not result in death. In Ziolkowski v. Continental Casualty Company,[11] relied upon by plaintiff in support of the foregoing, the Supreme Court of Illinois held that the word "injury" as used in an accident policy then before the court should be limited to a non-fatal injury.

Plaintiff points out that in the instant policy under the subject Risks Excluded the language discriminates between fatal and non-fatal injuries, accident and death, and "any other loss."[12]

It was not error to strike out defendant's third paragraph of answer.

The judgment of the District Court is affirmed.

**10** See Lyon v. Metropolitan Life Ins. Co., 101 F.2d 658, Circuit Court of Appeals Seventh Circuit, February 2, 1939.

**11** 365 Ill. 594, 7 N.E.2d 451.

**12** "Clause 9. * * * nor shall it (this insurance) cover injuries, fatal or non fatal, * * * nor shall it cover accident, injury, disability, death or any other loss caused * * *; nor shall it cover injury, disability, death or any other result * * *"