Adele S. DUGGAN et al., Plaintiffs, Appellants,

v.

The TRAVELERS INDEMNITY COM-PANY, Defendant, Appellee.

No. 6906.

United States Court of Appeals First Circuit.

Heard Sept. 12, 1967.

Decided Oct. 17, 1967.

Mack M. Roberts, Brookline, Mass., for appellants.

John F. Drum, Boston, Mass., with whom Badger, Parrish, Sullivan & Frederick, Boston, Mass., was on brief, for appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

In this diversity case appellant, on her own behalf and as administratrix of her late husband's estate, sued appellee insurance company to recover $20,000, the maximum coverage on a comprehensive personal liability policy. Following a trial without a jury, the district judge

found for appellee and appellant took this appeal. The major question we face is whether the policyholders, by giving notice of an accident which referred by number to one liability policy issued by their insurer, fulfilled the notice requirement of a second liability policy of the same insurer, under binder at the time of accident and notice but not yet evidenced by a formal document.

Appellant and her husband had, as of August 30, 1956, purchased a three year liability policy providing a coverage of $10,000 against the claim of any person to whom they should become liable by reason of bodily injury arising out of the ownership, maintenance or use of their premises. On February 17, 1959, desiring to obtain broader coverage and realize a saving in premium, appellant's husband requested his insurance agent to adjust his existing insurance policy (by deleting therefrom reference to insureds' residence) and order new comprehensive personal liability insurance in the amount of $20,000 (making specific reference to said residence). The agent called appellee's general agents on February 17 and wrote them on February 18, requesting these actions to be effective as of February 17. The resulting policy was finally issued on April 27, 1959, effective from February 17. In the meantime, however, on the very day of the letter to the general agents, February 18, a dog owned by appellant and her husband bit a customer of appellant at the latter's beauty parlor.

Shortly thereafter appellant's husband notified their insurance agency of the accident and, on March 13, that agency called and wrote to appellee's general agents, referring by number to the $10,000 policy, and requesting that appellee be notified of the dog bite claim. It also appears from a statement given by appellant to appellee on March 23 that appellant had received a letter from the victim's lawyer on March 10. Nothing was said in the letter of notification to appellee's general agents about the new comprehensive liability policy which as yet had not been issued.

Suit was brought by the victim against appellant and her husband in December 1959, in the Massachusetts Superior Court for Suffolk County, claiming damages of $50,000. On January 12, 1960 appellee's adjuster wrote appellant and her husband, acknowledging receipt of summons, and saying that its attorney would protect their interests "under the policy which you carried with this company at the time of the accident". The letter went on to point out that the policy referred to was limited to $10,000 for one person, and suggested that they might want their own attorneys to protect their interests above the policy limits. The matter proceeded to hearing in November of 1961 before an auditor, with an attorney retained by appellant and her husband present "part of the time". The auditor found for the plaintiff in the amount of $25,000. In reporting this to appellant and her husband, appellee's adjuster referred to the fact that the finding exceeded the policy limits "which you carried with this company at the time of the accident". The finding was confirmed by a Superior Court judge, and, following an unsuccessful appeal, execution issued on July 10, 1963 in the amount of $30,685.94, including interest and costs, of which appellee paid $10,000. It was only at this juncture, after appellant consulted a lawyer, prior to paying the balance, that she discovered the $20,000 comprehensive liability policy. The availability of her husband at this time does not appear. He died the following spring.

This suit followed, with appellee asserting as defenses that only the $10,000 policy was in force and applicable on the date of the accident, that no notice was given under any other policy, and that if any $20,000 policy was issued, it was either procured by fraud or was procured after the accident. The district court found, on the basis of events which it determined could have been verified by appellee without reliance on appellant's memory, that the accident had indeed occurred on February 18, after the arrangement to purchase the $20,000 policy had

been made.* It also concluded that the accident fell within the coverage of that policy. But it also concluded that timely notice was not given appellee under that policy, that this failure to give notice prejudiced appellee in not alerting it to its maximum exposure, and that this material breach of policy obligations was not waived by appellee.

This seems to us a rare case of small compass, not frequently encountered, where each side may be said to be both well intentioned but unmindful of the second policy, where neither the relevant (Massachusetts) statutory nor case law has addressed the precise issue, and where a result, in accord with the tenor of prior law, should take into account the relative capacities of such parties to guard against such contretemps.

■ The notice provision of the policy in issue requires "* * * particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses". This is not a provision mandated by such a statute as Mass.Gen.Laws ch. 175, § 108(3) (a) (5) (1958) (relating to accident and health policies), but seems rather to be the result of appellee's satisfying standards required by the Commissioner of Insurance for the Commonwealth of Massachusetts. The fact that it does not, therefore, possess any special statutory sanctity is probably of little moment since it is clear that it is consistent with the purpose of the notice requirement—to give the insurer timely opportunity to investigate the circumstances surrounding a possible claim. Rollins v. Boston Casualty Co., 299 Mass. 42, 45, 11 N.E.2d 918 (1937).

■ If the agent's letter of March 13 to appellee's general agents was meager, the statement of appellant taken by appellee 13 days after appellant received a letter from the victim's lawyer—less than 25 days after the accident—filled in all necessary details. In any event, no claim is made that the statement was deficient in any respect—of substance or of timing—except that no reference was made to the new policy. But at that point of time there was no new policy to refer to by number and no document possessed by appellant or her husband. Indeed, it is possible that the insureds expected no separate, additional policy but assumed that their desired changes would be accomplished by amendment to their existing policy. Appellant's husband simply called the agent who had sold both policies. He in turn sent on the notice of claim, referring to "the policy" and the only policy number then extant.

This limited reference, of course, was misleading. The agent should have referred to his previous letter, written less than a month earlier, regarding a binder on the $20,000 policy. But appellee, on receipt of this letter of notice of claim, had to go to the files to check coverage— for this was not mentioned in the agent's letter. We do not know what appellee did. We can, however, draw the conclusion that, from the outset, appellee was strongly influenced by the statement it took from appellant that the accident happened on February 17—the date from which the new policy was to be effective. As we have noted, this assumption was found erroneous by the district judge. Appellee labored, therefore, under the impression either that the new policy was procured by fraud or that it was procured after the accident as its answer specifically alleges. In the former case, this

---

* Although Mrs. Duggan signed a statement on March 23, 1959, fixing the date of the accident as February 17 at 5:00 p. m., the same statement referred to a police investigation, the hospital admission of the dog-bite victim, and the delivery of the offending dog to the Animal Rescue League. These events, thought the district judge, could easily have been proved to have occurred on February 17 had they, in fact, happened on that day. Failure of the defendant-appellee to produce such evidence, and Mrs. Duggan's testimony that her statement of March 23 was in error, led to the finding by the court below that the accident happened on February 18.

was not a claim to be recognized. In the latter case, this was a claim which the appellant and her husband had deliberately decided was not available.

That appellee may have had complete knowledge of what was in its files but labored under a delusion as to the date of accident is indicated by the two letters it sent its two insureds. When suit was brought, and again when the auditor made his findings, appellee used the identical guarded language in referring to the policy (or the policy limits): "* * * which you carried with this company at the time of the accident." This phrase, we think, would have been completely dispensable if appellee had really been in the dark about the policy in issue, the $20,000 policy. Appellee could have said simply that its attorney would protect the insureds' interest "under your policy" and that the auditor's finding exceeded "your policy limits". To us the repeated clause suggests knowledge of the later issued policy conjoined with either a belief that the larger claim would be fraudulent (which the district judge demonstrated was not the case) or that the claimants, though innocent, had decided not to invoke their larger coverage (which would not be a rational reaction). In either event, a cynic might observe, appellee had nothing to lose. At worst it would have to pay the coverage to which it was committed on both policies; at best it would pay one third the amount.

As for appellant, or, more particularly, her husband, it does beggar speculation why he apparently never thought of the other policy, particularly after it was delivered to him. As the district judge observed, "The plaintiff has not attempted to explain why the late Mr. Duggan failed to tell his wife about having taken out a new $20,000 liability policy on the very day before the dog-bite incident. It is inconceivable that the coincidence never dawned upon him." Apart from the difficulty of a wife's explaining why a husband did not tell her something, we may comment that while the circumstance is bizarre, it is not — the judge having ruled out fraud — indicative of a calculating or self-serving motive.

Assuming, despite our observations about appellee's letters, that both parties acted in complete ignorance or forgetfulness of the existence of the second policy, who should pay the piper? The plight of appellee is, as the district judge pointed out, a real one. An insurer needs more than merely to know how the accident occurred, or the extent of injuries suffered. Its job in court is to try to prove non-liability or to mitigate damages. Its job out of court is to seek a reasonable settlement. And in this latter task its effectiveness is vastly enhanced if it knows that its exposure is large rather than small. On the other hand, once a notice of claim is filed, is it too much to ask that an insurer have a reasonable filing system, that its employees check the files for more than one policy covering the same insured for the same risk, and that, if questions arise over coverage, it surface them and, while reserving such rights as it sees fit to assert, proceed both to preserve the rights of its policyholder and itself? Cf. Restighini v. Hanagan, 302 Mass. 151, 153–154, 18 N.E.2d 1007 (1939). We think not. And we are confident that contemporary office systems and management are up to the task.

As for the insured, we ask only whether there are many laymen who can answer correctly the question: for just what risks are you covered by your various policies, or, how comprehensive is a comprehensive policy? We grant that basic commitments are to be undertaken seriously by policyholders. And one of the most important is to inform the insurer when and how — and soon — something has happened that has or might hurt them. This done, we think they have fulfilled their initial duty.

While legal precedents are sparse and not wholly on point, we think that they trend toward our holding. The only proximate Massachusetts case to which we have been cited, Rollins v. Boston Casualty Co., supra, held that the "full particulars" requirement of a policy covering both injury and death from accident

was satisfied by a notice giving "full particulars" only of the initial accident. It is clear that that notice did not alert the insurer to its full exposure, but it is equally clear that the court felt that the insurer was not misled into underestimating the injuries or foregoing investigation. A closer case is Canney v. Massachusetts Bonding & Insurance Co., 88 N.H. 325, 189 A. 168 (1937), where an accident policy and a dismemberment policy were sold at the same time. Claimant reported his accident, but did not report his amputation which took place three years later. The court held that the notice of accident sufficed for both policies. While confining its holding to what was essentially a single transaction, it observed that if the insured had referred to each policy by number, the insurer would have had no additional information. 88 N.H. at 329, 189 A. at 171. The prospect of greater exposure was not deemed crucial. So here.

Then there are Mangol v. Metropolitan Life Ins. Co., 103 F.2d 14 (7th Cir. 1939), where proof of death under a policy on decedent's life was held to be sufficient notice under an accident policy covering decedent and issued by the same insurer, and Dietlin v. General American Life Ins. Co., 4 Cal.2d 336, 49 P.2d 590 (1935), where a notice referring to a policy concerning one department of insurer was held to satisfy the requirements of notice of another department. The court specifically said, "Defendant is chargeable with knowledge of all policies issued by it to the insured." 49 P.2d at 598. While we readily recognize the factual differences between these cases and that before us, we deem the thrust of these cases—which appellee has sought to distinguish without citing analogous countervailing authority—as consistent with our stand here.

We have one other issue which deserves brief treatment. The policy excludes "any act or omission in connection with [business] premises". Appellee contends that the policy in question does not cover this accident because the dog bite occurred on the business premises of appellant. The district judge concluded that the occurrence fell within the coverage of the policy. We agree. We observe first that we are not sure that appellee preserved this point in its pleadings. The only peg on which to hang this defense was the allegation in its answer that no other policy than the first ($10,000) policy "was in force or effect or applicable on February 18, 1959". The plain reading of this pleading seems to us to mean that there was no comprehensive policy *in effect* on that date, not that the occurrence fell within the exclusions of the policy.

If, however, we concede that point, we face a more substantive problem. In the primary coverage clauses the insurer undertakes to pay reasonable medical expenses of any person who sustains bodily injury caused by an animal owned by its insured, whether that person be "on the premises" (i.e., non business) or "while elsewhere". Such a phrase is not found in the clause relating to payment of damages generally. This arguably could mean that the insurer has an obligation to pay medical expenses occasioned by dog bites on business premises but not other items of such damages. But, assuming that the exclusion of "any act or omission in connection with [business] premises" applies to both medical payments and other items of dog-inflicted damages, we have alternative possibilities of construction. This phrase could mean any result caused by the condition or operation or neglect of the premises or, more broadly, anything that happened on the premises.

 This is not the case of a dog known to be dangerous and kept on the premises, nor one of a dog guarding premises. Whatever might be the result of such situations, in this case the court found that the dog was not usually in the beauty parlor but had been left there temporarily while appellant's husband brought home some parcels. The accident could as well have happened on the streets or in a store. That it happened on business premises did not make it "in connection with" those premises. We are constrained to heed the injunction of

the Supreme Judicial Court of Massachusetts not only to construe policy terms against the insurer, who, after all, wrote the contract, but to construe exclusionary clauses particularly strictly. Palmer v. Pawtucket Mut. Ins. Co., Mass.Adv.Sh. (1967) 573, 575, 225 N.E.2d 331.

On the facts found the plaintiff is entitled to recover. The judgment of the District Court is reversed and the case remanded for entry of judgment for the plaintiff.