Connolly, J.
Plaintiff insured, High Voltage Engineering Corp. (“HV”) brought this action against defendant insurer, American Employers’ Insurance Co. (“AE”), alleging that AE has a duty to defend and indemnify HV with respect to three civil actions and a DEQE claim brought against HV. This matter is now before this Court on the plaintiff HVs motion for partial summary judgment declaring that AE has a duly to defend HV in the three actions. For the reasons set forth below, HVs motion for partial summary judgment is ALLOWED.
BACKGROUND
HV is a company engaged in various manufacturing operations. From approximately 1956 to 1989, HV operated a manufacturing, repair, and laboratory facility in Burlington, Massachusetts (“HV site”).
In December 1958, AE sold to HV an insurance policy covering the period from December 31, 1958 through December 31, 1961 (“Policy”). The Policy provided comprehensive liability coverage, under which AE agreed that if HV was subjected to liability because of property damage, AE would pay all sums for which HV was liable.[1] Moreover, the Policy provided that AE would defend HV in any suit for property damage, even if such suit was groundless.[2] The policy required HV to provide AE with immediate notice of such suits.[3] At other times during the course of HVs operations at the HV site, HV obtained additional liability insurance from AE as well as other insurance companies.
In 1988, HV was named as a defendant in a case entitled Brecher v. High Voltage Engineering Corp., Civil Action No. 88-5827, Middlesex Superior Court (“Brecher”). The Brecher complaint alleged that the plaintiffs had purchased certain property from HV in 1984, and that the property had been contaminated by releases of hazardous materials by HV. HV first gave notice to AE oftheBrecheractionbyletterdatedSeptember 18,1988. The letter referenced only certain excess policies in effect between March 24, 1969 and January 1, 1974, and not the comprehensive Policy described above. By letter dated October 24, 1988, AE stated that it had no duty to HV with respect to the Brecher action under the excess policies referenced in HVs letter. By letter dated August 11, 1992, HV made claim against AE based on the comprehensive, primary Policy. At the time, AE had no knowledge of the Policy, since any copies had likely been destroyed as a result of the then existing record retention policies. By letter dated March 9, 1994, AE acknowledged that it did provide comprehensive, primary coverage to HV under the Policy, for the period between 1958 and 1961.
By letter dated April 27, 1988, the Department of Environmental Quality Engineering (DEQE) (now the Department of Environmental Protection) made written demand upon HV to pay for certain actions as a result of contamination at the HV site. Various administrative proceedings (“DEQE proceedings”) followed the DEQE demand letter. By letter dated May 10, 1988, HV gave AE notice of the DEQE claim.
On December 16, 1993, HV was served with a complaint entitled Brace Silverman, as Trustee of Blanchard Trust v. High Voltage Engineering Corp., Civil Action No. 93-5533B, Suffolk Superior Court (“Blanchard”). The plaintiffs in Blanchard allege that Blanchard Trust purchased certain property from HV, that the property purchased from HV was contaminated due to releases of hazardous substances, and that the contamination migrated and damaged other property purchased by Blanchard Trust. HV gave AE notice of the Blanchard action on January 5, 1994.
On April 21, 1994, HV was served with a third complaint, entitled RHI Holdings Inc. v. High Voltage Engineering Corp., Civil Action No. 94-10685 REK, United States District Court for the District of Massachusetts (“RHI’). The RHI plaintiffs allege that hazardous substances released by HV have migrated to the adjacent property, owned by the plaintiffs. HV gave AE notice of the RHI action on April 26, 1994.
There is no dispute that HV gave proper and timely notice with respect to the Blanchard and RHI suits. AE *2 concedes that the allegations in the underlying complaints trigger AE’s duty to defend HV against the Blanchard and RHI actions.
The Brecher suit and the DEQE proceedings have been settled. Pursuant to these settlements, HV has made substantial payments. HV has also incurred defense costs in connection with the Brecher, Blanchard, and RHI suits and the DEQE proceedings.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56 (c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the situation is such that “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso, supra.
As a general rule, the interpretation of an insurance policy is a question of law for the court. Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). It is well settled that “where an insurer drafts the policy, the language is strictly construed and all ambiguities are resolved against the insurer.” Liberty Mutual Ins. Co. v. Tabor, 407 Mass. 354, 362 (1990), citing Transamerica Ins. Co. v. Norfolk & Dedham Mut. Fire Ins. Co., 361 Mass. 144, 147 (1972). “An ambiguity exists in an insurance contract when the language contained therein is susceptible of more than one meaning . . . However, an ambiguity is not created simply because a controversy exists between parties,” each favoring a different interpretation. Jefferson Ins. Co. of New York v. Holyoke, 23 Mass.App.Ct. 472, 475 (1987).
The facts in this case are essentially undisputed. The only issues relate to the existence of AE’s duty to defend HV under liability policies issued by AE to HV. Ancillary issues also exist with respect to the extent of the duty to defend.
A. Duly to Defend
It is undisputed that the notice provided by HV in the Blanchard and RHI actions as well as the DEQE proceedings has triggered AE’s duty to defend in those matters. AE contends that it has no duty to defend against the Brecher action due to HVs failure to give timely notice.
Under the Policy, HV must “immediately forward to [AE] every demand, notice, summons or other process received by him.” HV first gave AE notice of the Brecher action by a letter dated September 28, 1988, claiming coverage under certain excess policies. AE correctly informed HV that these excess policies did not cover the Brecher action. It was not until August 11, 1992 that HV discovered and sought the primary and comprehensive coverage of the Brecher action under the Policy. AE has acknowledged that the Brecher action is covered under the Policy. However, since it did not claim coverage under the Policy itself until nearly four years after the Brecher suit was initiated, AE contends that HV failed to provide the immediate notice required by the Policy. HV responds that the letter of September 28, 1988 gave AE sufficient and timely notice of the Brecher claim, even though the letter incorrectly claimed coverage under the excess policies.
This issue may be resolved by examining the plain meaning of the relevant language in the Policy, construing all ambiguities against the insurer. The Policy requires only that HV “immediately forward to [AE] eveiy demand, notice, summons or other process received by him.” There is no requirement that HV specifically reference which policy, if any, is implicated by the claim against HV. The Policy is therefore ambiguous with respect to which party, the insured or the insurer, bears the burden of identifying the correct policies once the insured has forwarded a claim against it to the insurer. Construing this ambiguity against the insurer AE, this Court holds that HV satisfied the notice provision of the Policy through the September 28, 1988 letter, notwithstanding HV’s failure to reference the correct policy.
Alternatively, this Court is persuaded by the reasoning in Duggan v. Travelers Indemnity Co., 383 F.2d 871 (1st Cir. 1967), the facts of which parallel those in the instant case. In Duggan, the insured gave the insurer notice of an accident under a policy which did not cover the accident, failing to reference a second policy which did cover the insured’s claim. The insurer responded by denying coverage under the first policy, apparently without determining whether the claim was covered under any other policy. The First Circuit characterized the situation as one in which both parties innocently erred in overlooking the second policy, and determined that the solution “should take into account the relative capacities of such parties to guard against such contretemps.” Id. at 873. The court found that as between the two parties, the insurer is in the best position to avoid such situations. Id. at 874. The court reasoned, “once a notice of claim is filed, is it too much to ask that an insurer have a reasonable filing system, [and] that its employees check the files for more than one policy covering the same insured for the same risk?” Id. at 874. Concluding that an insurer “is chargeable with knowledge of all policies issued by it to the insured,” the First Circuit held that the insured’s notice to the insurer referencing one policy was sufficient to satisfy the notice requirement of the second policy. Id. at 875.
In this case, the ability of both HV and AE to identify the Policy as the policy covering the Brecher action was handicapped by the fact that it was executed in 1958, approximately 27 years before the Brecher action. AE *3 argues, without citing authority, that this time differential distinguishes the present case from Duggan, since the passage of time and AE’s then-existing record retention policies prevented AE from discovering the much older Policy. This Court disagrees. Nothing about the time interval changes “the relative capacities of [either party] to guard against” errors in identifying the correct policy. As for AE’s record retention policies, this Court does not believe that an insurer’s destruction of its own records of policies should excuse it from its obligations under those policies. The fact therefore remains that the insurer is in the best position to maintain records of the insured’s policies and to determine whether the claim for which the insured has provided notice is covered by a policy issued by the insurer. For the same reasons as provided in Duggan, this Court holds that HV’s September 8, 1988 letter to AE constitutes sufficient and timely notice under the Policy.
Having determined that AE has a duly to defend against the Brecher action, and because AE has conceded that its liability policies cover the Blanchard and RHI actions and the DEQE proceedings, HV’s motion for partial summary judgment declaring that AE has a duty to defend in these actions is ALLOWED.[4]
B. The Extent of AE’s Liability
AE seeks to limit the extent of its liability by arguing that (1) with respect to the Blanchard and RHI actions, it has no duty to pay presuit costs, and (2) with respect to the Brecher, Blanchard, and RHI actions, liability is not joint and several, but rather, should be apportioned equally among the various insurers and the insured. These issues have no direct bearing on HV’s motion for partial summary judgment declaring that AE has a duty to defend in all three actions. However, because the issues of presuit costs and allocation of defense costs have been briefed by the parties and may be settled as a matter of law, the Court addresses them below.
1. Pre-Suit Costs
The Policy provides that AE shall “defend in his name and behalf any suit against the Insured alleging such injury.” (Emphasis supplied.) On the basis of this language, AE contends that its obligation to defend HV in the Blanchard and RHI cases was triggered only when the suits were filed, so that AE is not liable for any costs incurred by HV in anticipation of the Blanchard and RHI suits. While this may be the general rule, the First Circuit in Liberty Mutual Ins. Co. v. Continental Casualty Co., 771 F.2d 579 (1985), has recognized that in some narrow circumstances, an insurer may be held liable for presuit costs. In Liberty Mutual, the policy contained the same provision as above, which linked the duty to defend to the existence of a “suit.” Nevertheless, the court held that an insurer may be liable for presuit costs where (1) the third party made its initial claim against the insured before the third party actually filed suit, (2) the insured immediately notified the insurer of the third party’s claim, (3) the nature of the claim created a near certainty that a suit would be filed, (4) the presuit services would have been performed after the suit was filed had they not been performed before, and (5) after the insurer’s refusal to defend, the insured had little choice to retain counsel and prepare to defend itself when it did. Id. at 586. Under these narrow circumstances, “the presuit services were correctly considered as part and parcel of the defense against the liability suits.” Id. Contrast Sarnafil, Inc. v. Peerless Insurance Co., 418 Mass. 295 (1995) (insurer not liable for arbitration costs incurred by insured prior to notifying insurer of the claim).
Accordingly, this Court holds that there is no per se rule limiting the defense costs for which AE must pay to those incurred after the actual filing of the suits. Rather, AE may be obligated to pay the presuit costs in the Blanchard and RHI actions to the extent that such costs meet the requirements listed in Liberty Mutual
2. Apportionment of Defense Costs
The next issue is whether AE is liable for only a prorated portion of defense costs, or whether it is jointly and severally liable for the total amount without proration to the insured, but subject to contribution by other insurers.
The Policy provides that AE shall “pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him ... for damages because of injury to or destruction of property.” The Policy contains no language stating that the insurer’s duty to defend the insured is limited by additional insurance policies imposing a duty to defend upon other insurers. Courts have interpreted such “all sums” language to mean that the insurer is required to provide full coverage once coverage under the policy was triggered. J.H. France Refractories Co. v. Allstate Ins. Co., 626 A.2d 502 (Pa. 1993).[5] See also ACandS, Inc. v. Aetna Casualty and Surety Co., 765 F.2d 968 (3d Cir. 1985); Lac D’Amiante du Quebec v. American Home Assurance Co., 613 F.Supp. 1549 (D.C.N.J. 1985). Moreover, “where it has been determined that each insurer is fully liable to plaintiff for indemnification, ‘it follows’ that each is fully liable for defense costs without proration to the insured and subject to contribution or in accordance with any ‘other insurance’ clauses in the policies . . . When more than one insurer was on the risk . . . they are jointly and severally liable to plaintiff for costs of defending the suit.” Lac D'Amiante, supra at 1563.
Likewise, on the basis of the “all sums” language of the Policy, this Court holds that AE is obligated to provide full coverage to HV, and is therefore jointly and severally liable for the costs incurred in defending against the Brecher, Blanchard, and RHI actions. This Court notes that notwithstanding this conclusion, “[t]here is no bar against an insurer obtaining a share of . . . defense costs from other insurers under ‘other insurance’ clauses or under the equitable doctrine of contribution.” J.H. France, supra at 509.
*4 Accordingly, this Court holds that AE’s liability under its duty to defend the Brecher, Blanchard, and RHI actions is joint and several, without proration.
To summarize, HVs motion for partial summary judgment declaring that AE has a duty to defend HV against the Brecher, Blanchard, and RHI actions is allowed . AE’s liability under its duty to defend is not strictly limited to defense costs incurred after the suits were actually filed. Rather, AE is liable for presuit costs to the extent that such costs satisfy the requirements listed in Liberty Mutual, supra. AE’s liability under its duty to defend is joint and several, and is not limited to its pro-rata portion of the defense costs. While providing these guidelines, this Court does not determine the actual defense costs for which AE is liable to HV.[6]
ORDER
For the foregoing reasons, it is ORDERED that plaintiff High Voltage Engineering Corp.’s motion for partial summary judgment declaring that the defendant American Employers’ Insurance Co. has a duty to defend the plaintiff in the Brecher, Blanchard, and RHI actions as well as the DEQE proceedings, and that this obligation is joint and several, is ALLOWED.

In Section I, Coverage D of the “Insuring Agreements" of the Policy, AE agreed “[t]o pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.”

Section 11(a) of the “Insuring Agreements” of the Policy provides that AE shall “defend in his name and behalf any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company.”

Section 10 of the “Conditions” of the Policy provides: “If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.”

Since this Court has determined that AE’s duty to defend HV against the Brecher action was triggered by the notice of September 18, 1988, AE’s arguments with respect to whether it has been prejudiced by the four-year delay in discovering the Policy has no bearing in this matter.

In J.H. France, the Supreme Court of Pennsylvania rejected the scheme adopted by the lower court, whereby each insurer’s obligation to indemnify was determined on a pro rata basis apportioned upon the amount of time that each policy was in effect. The Court stated that the “[f]irst, and most compelling [reason] is the language of the policies themselves. Each insurer obligated itself to ‘pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury to which this insurance applies.’ . . . Under any given policy, the insurer is contracted to pay all sums which the insured becomes legally obligated to pay, not merely some pro rata portion thereof.” Id. at 507.

In particular, AE has presented arguments with respect to what constitutes “fair, necessary, usual and reasonable” defense costs. Similarly, AE contends that HV must be held liable for any settlements which impairs AE’s contribution rights by releasing other insurers from their obligation to exhaust their coverage. These issues raise factual questions which have no bearing on AE’s duty to defend and need not be addressed at this juncture.