Rockingham,
No. 4230.

BENJAMIN COHEN & a. v. JOHN HANCOCK MUTUAL LIFE INS. CO.

Argued November 4, 1953.

Decided November 30, 1953.

*Leo Liberson* (by brief and orally), for the plaintiffs.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Booth* orally), for the defendant.

KENISON, C. J.  The plaintiffs' contention that the policy did not lapse is based on the proposition that the four quarterly payments of $150.43 amounting to a total annual payment of $601.72 constituted an excess payment of $34.16 annually above the annual premium required of $567.56.  Since the quarterly premiums had been paid for approximately ten years it is argued that these alleged annual overpayments totalling $332.62 were sufficient to take care of the unpaid quarterly premiums which were due in May and August and continue the policy in effect until May 14, 1950, which was after the insured's death.  The plaintiffs have cited no case in support of this contention and research has not disclosed one in which the matter was specifically decided.  If we could accept the basic premise of the plaintiffs' contention that the quarterly premiums constituted excess payments or overpayments of the premium, we would concur in their conclusion.

We find nothing in the reserved case indicating that the insured assumed that he was making overpayments and the fact that he chose to continue his insurance in force by quarterly payments rather than annual payments is some indication that he did not intend to take advantage of the lower annual premium.  However, the short answer to this contention is the insurance contract itself.  By the terms of the application, which was made a part of the policy, and the policy itself the insured was informed in unambiguous

language that the quarterly premium was $150.43 and that the annual premium was less than four times that amount, namely, $567.56. Furthermore the company's published rates provide for a higher quarterly 'premium, the amount of which was known to the insured at the time of his application and for almost ten years thereafter. It is not argued that this procedure violates customary insurance practice and it is certainly not unusual in commercial transactions for an obligation payable annually in advance to be less than the same obligation paid quarterly over a twelve-month period. We therefore conclude that the granting of a directed verdict for the defendant on count one by the Trial Court was proper.

The essence of count two of the plaintiffs' declaration is that the company has waived the prompt payment of quarterly premiums and is estopped to now assert that defense. The plaintiffs offered to show that the insured had another policy with this company having an automatic premium loan provision and that premiums on that policy were paid by the automatic premium loans after the grace period. The plaintiffs concede that the doctrine of waiver or estoppel as applied to late premium payments is limited by the rule in *Daley* v. *Insurance Co.*, 81 N. H. 502, to such periods of time as the company customarily allowed. However it is contended that the notices the insured received indicating that the automatic premium loans had become effective after the grace period on that policy is some evidence that the company waived the prompt payment of premiums on this policy. The dissimilarity between the two policies is one sufficient reason why this evidence was properly excluded by the Trial Court. It is the very nature of an automatic premium loan provision that it does not go into effect until after the grace period has expired. Since the insured has the advantage of the grace period in which to make his premium payment the company does not invoke the automatic premium loan until after the grace period.

Assuming for the purposes of argument that the two policies were of sufficient similarity that they could be considered on the issue of waiver and estoppel, the plaintiffs still could not prevail. The acceptance of a premium in two instances a few days after the expiration of the grace period has been held not to be sufficient to extend it for a period of six months. *Jean* v. *Association*, 92 N. H. 514. In the present case there was no conduct on the part of the company which would give the insured as a reasonable person any

reason to believe that a premium due in May would be accepted in October. The notices sent to the insured by the company indicated that this was not so. There is no conduct on the part of the company which evidenced any intention not to insist on the payment of premiums within the grace period in the absence of an automatic premium loan provision which was not contained in this policy. See *Parker* v. *Moore*, 59 N. H. 454; *Therrien* v. *Maryland Casualty Co.*, 97 N. H. 180, 182. The Trial Court properly excluded the offer to introduce the other policy and the automatic premium loan notices which were forwarded to the insured in connection with it. There being no other evidence of waiver or conduct which could be the basis of estoppel, there was no reason for a jury trial on this issue and the directed verdict for the defendant was warranted on count two.

The third count in the plaintiffs' declaration is based on the contention that the insured did not make a binding election in the application for his policy by striking out "extended term insurance" as one of the nonforfeiture provisions to become effective if the policy lapsed for nonpayment of premiums. It is clear from the reserved case that such an election was made by the insured in his application and that the election so made could have been changed by the insured before his death. No such change was attempted or made by the insured during the grace period, or in August when he was advised that the policy had lapsed "except for the reduced paid-up insurance value" or in October when he was notified again of the lapse and advised that the policy continued only as participating paid-up insurance for a stated amount. Since the application is a part of the policy and they must be construed together (*Adamaitis* v. *Metropolitan Life Ins. Co.*, 295 Mass. 215, 219), the election was binding unless it was inconsistent with the policy and the statute under which it was issued. *Reingold* v. *New York Life Ins. Co.*, 85 F. (2d) 776.

The policy was issued in Massachusetts and is governed by the law of that commonwealth. *Marston* v. *Mass. Life Ins. Co.*, 59 N. H. 92; *Maryland Casualty Co.* v. *Martin*, 88 N. H. 346, 348. The provisions of Gen. Laws, Mass. (*ter. ed.*) c. 175, s. 144, as amended by Acts and Resolves of 1938, c. 209, s. 1, are the statutory provisions in effect at the time the policy was issued. The statute permitted life insurance companies to make extended term insurance the automatic nonforfeiture benefit if the cash surrender value option or the paid-up insurance option was not elected by the

insured. That statute was incorporated in this policy in the following language: "extended term insurance shall be automatically binding on the Company, without any further stipulation or act, unless the cash surrender value or paid-up insurance is elected . . . ." Both the application form and the policy form had been approved by the Insurance Commission of Massachusetts and we have not been persuaded that they are contrary to statute under which they were authorized and issued. *Swift* v. *Columbian Nat'l Life Ins. Co.*, 262 Mass. 399.

The plaintiff beneficiaries unsuccessfully seek to enforce an option after the insured's death which the insured did not choose to make in his lifetime. *Columbian Nat. Life Ins. Co.* v. *Griffith*, 73 F. (2d) 244. There has been no conduct or course of action in this case to estop the company from paying into court the value of the paid-up insurance in accordance with the insurance contract. Since the election made by the insured in his application was never subsequently changed and since the election was lawful when made (*Day* v. *Metropolitan Life · Ins. Co.*, 11 Cal. App. (2d) 681, the plaintiffs cannot prevail under count three of their declaration.

*Judgment for the defendant.*

All concurred.