*Southern District*

## No. 132

## ALVAN E. LEVENSON, TRUSTEE
## v.
## JOHN C. BERTOLET

Argued: May 19, 1976; Decided: December 7, 1976.

Case tried to *Rider, J.,* in the District Court of Northern Norfolk. Number: 02778.

Present: Lee, P.J.; Hurd, Tamkin, J.J.

**Tamkin, J.** This is an action of tort, commenced by writ dated August 8, 1974, in which action damages were claimed in the sum of $3,000.00.

Plaintiff's declaration read as follows:

"The plaintiff says that on or about the 2nd day of February, 1970, he rented to the defendant certain premises known as 918 Great Plain Avenue, Needham, Massachusetts; that the said defendant upon leaving said premises at the expiration of his occupancy destroyed, mutilated and damaged the real estate and personal property therein and left the said premises in a wrecked and damaged condition; that the defendant, his agents or servants, willfully, intentionally and without right destroyed, injured, defaced and marred the said premises; that the plaintiff will be put to great loss for repairs, depreciation and loss of the use of his premises, for all of which he claims damages."

The defendant's answer pleaded a general denial, and the Statute of Limitations, and that if any damage was caused to the premises, it was normal wear and tear.

We summarize the evidence as follows:

The plaintiff, Alvan Levenson, testified that:

He was the sole trustee of the Needham Levenson Trust. As Trustee he owned the building numbered 918 Great Plain Avenue, Needham. As a result of a conversation in January, 1970, the defendant became a tenant at will of the premises commencing on or about February 1, 1970 and the premises consisted of the first floor of the building, with storage space in the basement of the building. The previous tenant of the building was the operator of a mutual fund who had rented the premises from March to October, 1969. Prior to that tenancy, he had made renovations and repairs. Prior to the occupancy of the mutual fund operation, the store had been a paint store operated by Sherwin Williams Company. The renovations included the installation of 1200 square feet of carpet with padding, and panelling of the first floor premises. This was the first rug he had ever bought and that it had cost $1,198.08. The carpet was in the same condition one year later when the defendant occupied the premises as when purchased, and after the defendant vacated the premises in June, 1974, the carpet and padding were valueless. When the defendant vacated the premises, papers were strewn over the floor, counters were on their sides, the panelling was stained with ink, wires came through the rug and padding which were telephone and electric wires, the rug was stained heavily with ink, and was cut and bunched, and the light fixture was hanging. The defendant had erected a partition between the front and rear sections of the first floor premises as a divider, and that this partition had been removed by the defendant before leaving.

The witness stated that he engaged the services of one Daniel F. Langan, to clean the store and remove the debris for the sum of $265.00.

In cross-examination he testified that he knew the defendant was in the printing business when he rented the premises and had installed something like a Zerox machine. There was only one entrance way to the premises, the front door, but he (Levenson) was never present when supplies were brought in. He visited the premises once a month to collect the rent. He had not been present when any damage had been done to the premises or the carpet, and he saw no ink stains on the rug in 1970. He first saw them when the defendant vacated the premises. Neither the debris nor staining had damaged the floor of the premises, but all damage was confined to the carpet and padding. He admitted that he had a dispute with the defendant over the payment of a month's rent, and had told the defendant something like if he did not pay it, "it would cost him a couple thousand dollars."

Daniel F. Langan, a witness called by the plaintiff, testified that:

He was engaged by the plaintiff to clean the premises in question. He found debris on the carpet, the rug was stained, and the panelling was stained in various areas. The carpet was torn and holes were drilled in it for wires. He took eight (8) truckloads from the first floor and basement areas, and some of the paint cans and cartons had the marking of Sherwin Williams Paint Co. on them. The holes in the carpet were openings for the electric and telephone wires, and where the partition had been erected.

The defendant John C. Bertolet testified that:

He occupied the premises in February, 1970, and prior to erecting the partition installed large size printing and photographic machines necessary for his business. These machines were installed within a month or two after his occupancy, as because of their

size, they had to be installed before the partition dividing the store could be erected. Holes were made in the rug where the partition was built, and also for necessary telephone and electrical connections. In the first year, the carpet became stained from the use of ink in the usual course of business, and the stain on the panelling came from the locating on the shelf shown in the exhibit, containers of material necessary for the printing operation, and the stain was an accumulation of material. He admitted that debris was left on the first floor, and testified that he told the plaintiff that he and his wife would clean the place up, but the plaintiff said just to leave the keys. He denied that he had ever deliberately or intentionally damaged the carpet or the panelling. He testified that the plaintiff had demanded another month's rent which he had refused to pay, and that the plaintiff told him that if he did not pay the rent claimed, "it will cost you a couple thousand," and that when he moved in, the basement was stuffed with trash; and that he removed ninety (90%) per cent of it but some remained when he left.

At the close of testimony and before the final arguments, the defendant made the following requests for rulings, and the court took the action indicated:

1. The evidence does not warrant a finding for the plaintiff. *Denied.*

2. A tenant at will is not liable for permissive waste. *Inapplicable.*

3. If there was any waste, it was of a permissive nature. *Denied.*

4. There is no evidence of any voluntary waste. *Denied.*

5. If any damage occurred prior to August 4, 1972, the plaintiff cannot recover therefor, as such a claim is barred by the Statute of Limitations. *Granted.*

6. There is no legally cognizable evidence of damage, as neither cost of repair or replacement value is the rule of law governing the plaintiff's claim. *First part denied; second part inapplicable.*

7. The evidence warrants a finding for the defendant. *Granted, but I do not so find.*

The court found for the plaintiff in the sum of $715.00 and made the following specific findings of fact.

## FINDINGS OF FACT

"Defendant was a tenant at will in plaintiff's store from February, 1970, until the end of May, 1974. Defendant operated a printing business. In connection therewith he brought into the store several pieces of heavy equipment, paper stocks, printers' inks and other materials. He removed an existing partition and installed another. In March, 1969, plaintiff had renovated the store, including panelling of the walls, fixing the lights and installation of a new rug and pad measuring 156 square yards, which cost $1198.08. Plaintiff testified that the rug and pad were in new condition when defendant became a tenant less than one year later. When the tenant moved out, the floor was covered with debris, including papers, ink cans, overturned counters and the remnant of the partition defendant installed; the rug was rendered valueless by ink stains, holes and slashes; the wall panelling was marred with ink stains; a ceiling light fixture was damaged. It was necessary for the plaintiff to remove and discard the rug and the panelling and other materials at a cost of $265.00. Photographs were introduced in evidence by the plaintiff showing the debris and damage.

I find that the plaintiff's damage was caused by the voluntary and unreasonable use of the premises by the defendant."

The defendant claims to be aggrieved by the denial of his requests for rulings Nos. 1, 2, 3, 4 and 6, and the failure to find in accordance with the court's granting of the defendant's request for ruling No. 5.

## Denials of Rulings One, Two, Three, Four, Six

We do not agree with the defendant's contention that error was made in the denial of the defendant's requests for rulings numbered One, Two, Three, Four, Six. We believe "that the judge's special rulings and findings when considered in their entirety, indicate that his ultimate decision in favor of the plaintiff was not due to the application of incorrect principles of law" (citation omitted) but rather that it was based upon his subsidiary findings of fact (citation deleted). *Albert DiGesse v. Columbia Pontiac Co., Inc.,* —— Mass. —— (1975)[1].

## Granting of Defendant's Request for Ruling Five

We conclude that the trial court was in error in granting the defendant's request for ruling Five.

The duty of a trial court with respect to requests for rulings of law that are presented to a court is succinctly set forth in *Home Savings Bank v. Savransky,* 307 Mass. 601, 603, (1940): "A trial judge sitting without a jury, must correctly instruct himself as to the governing principles of law and must pass upon pertinent requests for rulings of law presented to him for this purpose in such a way as to make plain that he has not fallen into error."

In *Adamaitis v. Metropolitan Life Ins. Co.,,* 295 Mass. 215, 219, (1936). the court said: "And upon proper requests therefore he, (the trial judge) must state the rules of law adopted by him for his guidance as a trier of fact in order that the right of review thereof may be preserved. See: *John Hetherington & Sons, Ltd. v. William Firth Co.,* 210 Mass. 8, 18-19,

---

[1] Mass. Adv. Sh. (1975) 3281, 3284.

(1911), *Castano v. Leone,* 278 Mass. 429, 431 (1932), *Memishian v. Phipps,* 311 Mass. 521, 523, (1942), *Perry v. Hanover,* 314 Mass. 167, 173, (1943).

The only exception to this requirement is when the finding of fact made by the trial court renders the requests immaterial.

"A judge sitting without a jury has two functions, one to make rulings of law and the other to make findings of fact. These two functions are quite separate and distinct." See: *John Hetherington & Sons, Ltd. v. William Firth Co.,* 210 Mass. 8, 18-19, (1911).

In *Bianchi v. Denholm and McKay Company,* 302 Mass. 469, 471, 472, (1939), the court said: "The trial judge in the case like the present performs a dual function. He must adopt correct rules of law for his guidance and find the facts as guided by these rules. And upon proper requests therefor he must state the rules of law adopted by him for his guidance as a trier of fact in order that the right of review thereof may be preserved. *Adamaitis v. Metropolitan Life Ins. Co.,* 295 Mass. 215, 219, and cases cited. But such requests must be applicable to the evidence in the case. *Bangs v. Farr,* 209 Mass. 339, 344.

"Where the trial judge grants requests for rulings of a party as being correct in law, it will be assumed that the trial judge followed those principals in making his findings." *Feldman v. Davey Development Co., Inc.,* 340 Mass. 784, (1959).

We are unable to determine the date of damage to the plaintiff's premises from the findings of fact made by the trial justice.

It is to be noted that the plaintiff's writ, dated August 8, 1974, described the action as one of tort. The judge found that the defendant was a tenant at will in the plaintiff's store from February, 1970 until the end of May, 1974. The alleged damage would have had to occur sometime between February of 1970

and May of 1974. The tort action was either subject to G.L.c. 260, §2A (§2 of c. 274 of the Acts and Resolves of 1948) which provided for a two year Statute of Limitations, or it was subject to c. 777, §1, of the Acts and Resolves of 1973, which increased the limitation period from two to three years and which took effect on January 1, 1974. We are unable to determine whether the two year Statute of Limitations or the three year Statute of Limitations is applicable.

We determine prejudicial error and we hereby order the finding for the plaintiff vacated and order the case remanded to the District Court of Northern Norfolk for a new trial.