

## CONN. INVESTMENT CASTING
### vs.
## MADE-RITE TOOL CO., INC.

District Court Department
Appellate Division, Western District
Trial Court of the
Commonwealth of Massachusetts

**April 18, 1980**

**Michael G. West** for the plaintiff.
**Mark Beauregard** for the defendant.

Present: Cimini, Larkin & McGuane, JJ.

**CIMINI, J.** This is an action in contract in which the plaintiff seeks to recover the sum of $5,170.81, plus interest and a reasonable attorney's fee, based upon the sale to the defendant of a certain "barrel latch" ordered by said defendant.

The defendant's answer, in effect, denied that the debt was owed, and alleged that the plaintiff had breached its agreement with the defendant by: (a) failing to deliver the goods within the agreed time for performance; and (b) by failing to deliver goods which conformed to the contract.

The defendant also filed a counterclaim in the sum of $50,000.00, alleging that as a result of the plaintiff's breach, the defendant had suffered damage.

The court found for the defendant on the plaintiff's complaint, and for the original plaintiff on the defendant's counterclaim.

At the trial there was evidence tending to show:

That the plaintiff and the defendant entered into an agreement on or about June 27, 1975 whereby the plaintiff was to supply 1,600 barrel latches to the defendant.

The final due date for the barrel latches under the agreement was January 27, 1976. The evidence showed that the plain-

tiff shipped:

> 3 samples on September 19, 1975,
> 74 parts on January 21, 1976,
> 228 parts on February 27, 1976,
> 623 parts on March 9, 1976,
> 629 parts on April 8, 1976,
> 164 returned parts on April 28, 1976,
> 70 parts on May 14, 1976.

It should be noted that although samples were due under the contract on September 1, 1975, they were delivered on September 19, 1975. However, no complaint was ever made by the defendant as to this late delivery.

The evidence shows that the agreed price for these parts was $5,170.81, and that the defendant was billed for the same.

The defendant introduced evidence that these parts, which were supplied by the plaintiff, were in turn part of its contract with the United States Government. There was conflicting evidence introduced as to whether the plaintiff was aware of the defendant's contract to supply these parts to the United States Government.

The defendant testified that it received several extensions under its Government contract to provide these goods to the Government. The last extension received provided that the defendant was to supply 200 parts on or before May 14, 1976 and the balance, 1,375 parts, on or before June 28, 1976. The defendant testified that after it received the parts from the plaintiff, it was contemplated by the defendant that it would have to do additional work on these parts to comply with its Government contract. The defendant did not meet the final due date of June 28, 1976. The defendant testified that it had other priorities during this same time period, including approximately forty other Government jobs in process of which six or seven more priority items. The defendant's failure to meet the June 28, 1976 deadline caused the Government to cancel its contract with the defendant. As a result of this cancellation, the defendant lost both the contract price of $13,151.25 and certain administrative and overhead expenses, and was assessed a penalty by the Government of $2,440.75. As of the date of the trial, the defendant was still holding the barrel latches. The evidence showed that it was unable to resell them to the Government. The evidence also showed that the defendant could not use the parts itself.

The defendant testified that certain of the goods sent by the plaintiff did not meet specifications the defendant provided to the plaintiff. Evidence was introduced that of the approximately 1,625 parts provided to the defendant, 179 parts were returned to the plaintiff in early April, 1976 by and after notice from the defendant. Of these 179 parts, 164 were reworked and returned to the defendant on or about April 28, 1976. The defendant testified that during the pendency of this contract it had numerous discussions with the plaintiff. the substance of these conversations was that the defendant was pressuring the plaintiff to deliver, and the plaintiff was responding that it was encountering unanticipated difficulties. On January 28, 1976, a date after the delivery due date under the contract, the defendant called the plaintiff and stated that the plaintiff was in breach of the contract, and that the defendant would make every effort to extend its Government contract so as to salvage the job.

The defendant also testified, based upon an inhouse inspection report dated April 26, 1976, that approximately twenty percent of the parts inspected were found to be non-conforming. The number of parts inspected totaled eighty, of which seventeen proved to be non-conforming. The parts inspected did not include the 179 parts returned earlier. The defendant testified that after April 28, 1976 it determined to rework the parts itself rather than return them to the plaintiff. This decision resulted from prior problems which the plaintiff had in producing conforming parts, and because of the need for speed in order to salve the Government contracts.

At the close of the evidence and prior to closing arguments, the plaintiff made the following requests for rulings:

"1. The evidence warrants a finding for the Plaintiff on its Complaint and on Defendant's Counterclaim. **Admitted.**

"2. The evidence does not warrant a finding for the Defendant either

on Plaintiff's Complaint or on its Counter-claim. **Denied.**

"3. As a matter of law, Defendant modified the due date for delivery of the goods under the contract between the parties up to and including May 17, 1976. M.G.L., Ch. 106, Section 2-209. **Denied.**

"4. As a matter of law, Defendant accepted the goods delivered to it by Plaintiff. M.G.L. Ch. 106, Section 2-606. **Denied.**

"5. As a matter of law, the goods delivered to Defendant were not defective but even if defective, Plaintiff cured said defects. M.G.L. Ch. 106, Section 2-606. **Denied.**

"6. As a matter of law as to the balance of goods Defendant claims to be defective, it has not allowed the Plaintiff a reasonable opportunity to cure said defects. M.G.L., Ch. 106, Section 2-508, 2-608. **Denied.**

"7. As a matter of law, Defendant is unable to prevail on its claim for lost profits as it has not introduced sufficient evidence to prove same. **Denied.**

"8. Upon the facts and the law, a finding should be rendered for Plaintiff in the full amount of its Complaint and for Plaintiff on Defendant's Counterclaim. **Denied.**

The court found the following facts:

"This is a complaint brought by a jobbing shop against a machining shop demanding payment for materials manufactured by the Plaintiff. The item in question is a so-called 'barrel latch.' The Defendant placed an order with the Plaintiff for approximately 1600 pieces to be machined according to specifications given and to be delivered by times designated. The Defendant, in turn, was to do further work on the items in accordance with a contract it had with the United States Government. The Defendant asserted a counter-claim alleging that due to the Plaintiff breaching its contract, the Defendant incurred actual and consequential damages.

"Upon consideration of all the evidence, I find that the Plaintiff breached its contract with the Defendant. The parts that were delivered were not in conformity with the specifications as given nor were they delivered on time.

"However, I do not find that the Plaintiff knew or reasonably should have known of any commitments the Defendant had with a third party. Nor do I find that the Defendant's alleged incidental and consequential damages were the natural and probable consequences of the Plaintiff's breach."

The plaintiff, claiming to be aggrieved by the denial of its requests for rulings of law 2 through 8, reported the same to us for our determination.

We find no prejudicial error.

This Division can review only questions of law and not issues involving findings of fact. Perry v. Hanover, 314 Mass. 167 (1943); **Adamaitis v. Metropolitan Life Ins. Co.,** 295 Mass. 215 (1936); **Bresnick v. Heath,** 292 Mass. 293 (1935).

The trial judge found that the plaintiff breached its contract with the defendant in that the parts delivered were not in conformity with the specifications as given and also that said parts were not delivered on time. These findings are evidentiary in nature, and are not to be disturbed if supported by any reasonable view of the evidence with the drawing of all rational inferences of which it is susceptible. **Barttro v. Watertown Sq. Theatre, Inc.,** 309 Mass. 223 (1941); **Weiner v. Egleston Amusement Co.,** 293 Mass. 83 (1935).

Breach of contract is usually a question of fact to be determined upon a consideration of all the evidence. **Castano v. Leone,** 278 Mass. 429 (1932).

Findings of fact of a trial justice must be accepted as final when supported by any rational consideration of the evidence including the reasonable inferences which could have been drawn therefrom, unless those findings are erroneous as a matter of law. **Casey v. Gallagher,** 326 Mass. 746, 748 (1951); **Charles I. Hosmer, Inc. v. Commonwealth,** 302 Mass. 495, 49 (1939). In this case, there was substanti

dence to support the findings of the trial rt.

any case, where there appears to be flicting evidence, such conflict would clude a finding for the plaintiff being uired as a matter of law. **Mastercraft yside Furniture Co. v. Sightmaster p.**, 332 Mass. 383, 388 (1955).

like vein, the general finding of the justice is conclusive if there is ence to support it. **Kellogg v. Suber,** Mass. 544, 546 (1952); **Codman v. ne,** 312 Mass. 570 (1942).

**Report dismissed.**
J. Cimini