CHARLES ADAMAITIS *vs.* METROPOLITAN LIFE INSURANCE
COMPANY.

Plymouth.   January 7, 1936. — September 8, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, DONAHUE, LUMMUS, &
QUA, JJ.

*Insurance*, Disability, Construction of policy.  *Contract*, Construction.
*Practice, Civil*, Requests, rulings and instructions; Appellate Division:
jurisdiction, appeal; Stipulation.  *Words*, "Totally disabled."

In determining whether the assured under a disability contract forming
part of a life insurance policy was "totally" disabled within a provi-
sion of the disability contract for the payment of benefits if he became
"totally and permanently disabled . . . so as to be prevented thereby
from engaging in any occupation and performing any work for com-
pensation or profit," the occupation of the assured as a "machinist
and farmer," as stated in his application for the insurance which
applied to and was part of the disability contract, was material and
should be taken into consideration.  LUMMUS & QUA, JJ., dissenting.

In an action heard without jury upon a policy of insurance, a ruling
requested by the plaintiff and containing three sentences, the first
two to the effect that the entire policy should be considered in con-
struing its terms and the third, correct as a proposition of law, to the
effect that certain words used in specifying the coverage of the policy
"are to be considered with regard to" a fact stated in the application,
in substance and sufficiently called upon the judge as the trier of fact
to instruct himself that the fact stated in the application was material
in deciding the issue of fact whether the plaintiff was within the
coverage of the policy;   and a refusal of the ruling, followed by a
finding for the defendant, was prejudicial error where it did not appear
from the record that the finding was not a result of the judge's failure
so to instruct himself.  LUMMUS & QUA, JJ., dissenting.

An agreement by the parties in an action in a district court, filed in the
Appellate Division after the filing there of a report by the trial judge
who had found for the defendant, "that an alternative verdict may
be rendered" and "that in the event of a finding for the plaintiff it"
should be in a certain amount, could not confer upon the Appellate
Division power to review or make findings of fact, and was not to be
interpreted as meaning that if prejudicial error appeared judgment for
the plaintiff should be ordered entered;   and where prejudicial error
of law was disclosed by the report but the report did not show as
established all the facts necessary for determining the question in
dispute, the Appellate Division had no power to direct the entry of
a finding for the plaintiff, under either § 124 or § 125 of G. L. (Ter.
Ed.) c. 231, made applicable to appellate divisions by § 110 of that
chapter, and a new trial should have been ordered.

CONTRACT.    Writ in the District Court of Brockton dated May 1, 1933.

The action was heard by *Murphy*, J.  There was a finding for the defendant and a report to the Appellate Division for the Southern District.  Proceedings there resulting in an order directing the entry of a finding for the plaintiff are described in the opinion.  The defendant appealed.

The case was argued at the bar in January, 1936, before *Rugg*, C.J., *Crosby*, *Field*, *Lummus*, & *Qua*, JJ., and afterwards was submitted on briefs to all the Justices.

*B. J. Killion*, for the defendant.

*L. H. Miller*, for the plaintiff.

FIELD, J.  This action of contract was brought in the District Court to recover total and permanent disability benefits under a supplementary contract attached to a life insurance policy.  See G. L. (Ter. Ed.) c. 175, § 24.

The facts that the plaintiff was insured by the defendant under a policy and supplementary total and permanent disability contract, which were in full force when the alleged disability commenced, and that the plaintiff made due proof of claim were admitted by the defendant.  The policy and supplementary contract were introduced in evidence.  There was evidence that they were issued on October 29, 1924.  It appeared that the supplementary contract was attached to the policy and made a part thereof.  This contract, as described in the report, sets forth that "in addition to the other benefits of the policy, if the assured, while the policy was in full force, became totally and permanently disabled as the result of bodily injury or disease occurring and originating after the issuance of said policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, the company would, during the continuance of such disability, waive the payment of each premium falling due under the said policy and contract and pay to your plaintiff the monthly sum of twenty dollars."

"Attached to the policy was a photo-engraved copy of the plaintiff's application for insurance which by the terms of the policy was made a part of the contract and the basis

of the contract. To the questions, in the application in regard to the occupation of the assured there was the answer, in handwriting, that the assured was a 'machinist and farmer.' It stated in print that these were all his occupations and further stated that no change in occupation was contemplated and that those were his only occupations for at least within the last ten years. The application referred to and applied to the supplementary disability contract as well as to the rest of the policy."

The evidence tended to show that the plaintiff was *permanently* disabled. Apparently there was no controversy on this issue. The principal, if not the sole, controversy was whether on the evidence the plaintiff was *totally* disabled within the meaning of the supplementary contract.

Evidence tended to show these facts: The plaintiff, a man about fifty years of age, for about twenty years previous to February 25, 1930, was employed as a machinist at a stove manufacturing plant and "also owned a small farm in which he lived . . . where he did some small amount of planting in the hours he had free from the stove factory." In November, 1929, "the plaintiff dislocated his right shoulder tearing several ligaments and paralyzing, to a large extent, the action of the entire right shoulder and arm and forearm." After some time "he went back on the same job in that stove factory, having some one help him and using mostly his left arm." On February 25, 1930, while drilling a hole, his "left eye was torn out entire," and the "right eye was impaired to so great a degree that in his right eye he had left only a partial direct vision and no lateral vision either toward the left or right." His "mind became and remained confused and . . . he became subject to dizzy, fainting spells which left him weak and shaken, and the recurrence of which became more and more close as time went on." As "time went on his left arm developed less grip than there was in his right arm." His "right arm and shoulder were disabled from the accident of November, 1929, to the date of hearing." According to the testimony of the plaintiff's physician "the plaintiff's left eye was completely missing, the right eye had only a very slight direct vision, the right

arm was practically useless, the left arm had a partial motion left and the plaintiff was extremely nervous and neurotic."

With respect to the plaintiff's ability to work the evidence was as follows: He testified, "I ran tractor. That's no work. I just steered tractor. My boy would shift plow. In all it was two hours one occasion, three hours on another. Before that I used to do it alone." The plaintiff's physician testified that the plaintiff could not perform the duties of a machinist or farmer as he had heard them described "except for the doing of occasional acts, temporary in their nature and unimportant with relation to the disability." A physician called by the defendant, however, testified that the plaintiff "could do work at farming. He can pitch hay, do hen business, lead cows, use a hoe."

The trial judge denied certain requests for rulings made by the plaintiff, among them request numbered 5, hereinafter set forth, and found for the defendant. There was a report to the Appellate Division. Thereafter the parties agreed "that an alternative verdict may be rendered," and that in the event of a finding for the plaintiff it should be in the amount of $625 with interest from the date of the writ. The Appellate Division by its "Finding, Decision and Order" decided "that there was prejudicial error in the trial court in the finding for the defendant and in the refusal to grant the plaintiff's fifth request," and ordered the entry in the case, "Finding of the trial court reversed and in accordance with agreement filed by the parties, finding for the plaintiff for $625 with interest from the date of the writ." The defendant appealed.

1. The denial of the plaintiff's request numbered 5 was prejudicial error.

The ruling requested was as follows: "The entire policy is to be taken into consideration in the fair and reasonable construction of its terms. By the terms of the contract the supplementary contract and the policy of which it forms a part are to be considered as a whole in the construction of the words used. The words 'any occupation and performing any work —' etc. are to be considered with

regard to the fact that the policy insures the claimant as a 'machinist and farmer.'"

The trial judge in a case like the present performs a dual function. He must adopt correct rules of law for his guidance and find the facts as guided by these rules. And upon proper requests therefor he must state the rules of law adopted by him for his guidance as a trier of fact in order that the right of review thereof may be preserved. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 18–19. *Castano* v. *Leone,* 278 Mass. 429, 431.

Clearly the policy, the supplementary contract and the plaintiff's application for insurance were to be construed together to determine the rights of the parties. *Paquette* v. *Prudential Ins. Co. of America,* 193 Mass. 215, 220. *Larsen* v. *Metropolitan Life Ins. Co.* 289 Mass. 573, 576. Even if the first two sentences of the requested ruling — which stated the law correctly — involved only principles of law to be applied by the judge in construing the instruments, (see *Bascom* v. *Smith,* 164 Mass. 61, 76,) the third sentence, that "The words 'any occupation and performing any work —' etc. are to be considered with regard to the fact that the policy insures the claimant as a 'machinist and farmer,'" in effect stated a rule of law for the guidance of the judge as trier of fact. In substance the requested ruling was that the plaintiff's occupations as stated in the application were material for consideration in determining the issue of fact whether the plaintiff was totally and permanently disabled.

The requested ruling was correct. The words "totally . . . disabled," as used in the supplementary contract, are expressly limited by the phrase "so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit." Complete physical or mental incapacity of the insured, therefore, is not essential to his total disability within the meaning of the contract of insurance. It is sufficient that his disability is such that it prevents him from performing remunerative work of a substantial and not merely trifling character. *Rezendes* v.

*Prudential Ins. Co. of America*, 285 Mass. 505, 510, 512.
*Treblas* v. *New York Life Ins. Co.* 291 Mass. 138, 139–140.
*Metropolitan Life Ins. Co.* v. *Foster*, 67 Fed. (2d) 264,
265.  See *Mutual Benefit Life Ins. Co.* v. *Commissioner of
Insurance*, 271 Mass. 365.  And the fact that the applica-
tion, which contains statements about the plaintiff's occu-
pations, "was made a part of the contract and the basis of
the contract" requires that the language of the contract
about total disability be interpreted in the light of these
statements.  Whether or not the effect of such statements
is to limit total disability to disability preventing perform-
ance of work within the scope of the occupations stated, or,
more broadly, performance of work within the scope of those
and similar occupations, has not been decided in this juris-
diction.  See, however, *Rezendes* v. *Prudential Ins. Co. of
America*, 285 Mass. 505, 514.  But even if we assume, in
favor of the defendant, that the generality of the language
in the supplementary contract is not limited by the state-
ments in the application, and total disability means ina-
bility to perform remunerative work of a substantial charac-
ter of any kind, the fact that the plaintiff was insured as a
"machinist and farmer" could not properly be disregarded.
Total disability is relative.  It does not depend wholly on
physical condition.  "Regard must be had to the insured,
to his age, education, experience, training and capabilities."
*Duhaime* v. *Prudential Ins. Co. of America*, 86 N. H. 307,
308–309.  A physical injury which would prevent perform-
ance of remunerative work of a substantial character by an
insured person who had long worked only as a machinist
and farmer might not prevent performance of work of that
nature by a business or professional man.  The fact, there-
fore, that the plaintiff was insured as a "machinist and
farmer," when on the evidence it might have been found
that these were his actual occupations, was material for
consideration by the trier of fact in determining whether
the plaintiff was totally disabled within the meaning of the
insurance contract.

Even if the requested ruling included statements of law
which, though correct, were not essential for the guidance

of the judge as trier of fact, and was somewhat indefinite in form, it was sufficient to direct the consideration of the judge to a principle of law important for his guidance as trier of fact. *Bergeron* v. *Forest,* 233 Mass. 392, 402. *Morey & Co. Inc.* v. *Sweeney,* 287 Mass. 210, 214, and cases cited. And it cannot be said that the refusal of the trial judge to rule as requested did not harm the plaintiff. The evidence in the case — except so far as the evidence of the plaintiff's injuries warranted inferences of his inability to perform other kinds of work — bore solely on his inability to perform the work of a machinist and farmer. The finding for the defendant may have been made on the ground that the evidence did not establish the plaintiff's inability to perform such work. But we cannot be sure that this finding did not result from a failure of the trial judge to regard as material to the issue of total disability the fact that the plaintiff was insured as a "machinist and farmer" and to consider the evidence with that fact in mind.

2. No question of the correctness of the finding for the defendant, except as such finding is affected by error in rulings of law, is presented by the report. The Appellate Division could not review findings of fact as such. G. L. (Ter. Ed.) c. 231, § 108. *Loanes* v. *Gast,* 216 Mass. 197, 199. *Reid* v. *Doherty,* 273 Mass. 388. The circumstances of this case do not bring it within the provisions of G. L. (Ter. Ed.) c. 231, § 125, made applicable to appellate divisions of district courts by G. L. (Ter. Ed.) c. 231, § 110. And the parties in this case could not by agreement confer on the Appellate Division the power to review findings of fact or to make alternative findings of fact. The prejudicial error of the trial judge, however, vitiated the finding for the defendant and entitled the plaintiff to a new trial of the case, unless the record warrants some other disposition of the case under G. L. (Ter. Ed.) c. 231, § 124, either by the Appellate Division (see § 110) or by this court. § 141. But, independent of the agreement of the parties, the record does not show "all the facts necessary for determining the question in dispute." On this question the record states evidence and not established facts, and

such evidence, though warranting a finding for the plaintiff, does not as matter of law require such a finding. A question of fact, therefore, remains to be determined. And while the agreement fixes the amount of damages "in the event of a finding for the plaintiff," the further agreement "that an alternative verdict may be rendered" cannot rightly be interpreted as an agreement that if there was prejudicial error in the trial of the case judgment is to be entered for the plaintiff.

It follows that the order of the Appellate Division must be reversed and the case stand for hearing in the trial court.

*So ordered.*

Justices Lummus and Qua are unable to agree to the opinion. The requested ruling, the refusal of which is held error, required the judge to take into consideration the occupations of the insured as stated in the application. But by the very words of the policy no weight could be given to that statement of occupations, for the policy clearly provides for monthly payments only if the insured is so disabled as to be prevented from engaging in "any" occupation and performing "any" work for compensation or profit, without restriction. There was no error in refusing to consider an immaterial matter. The requested ruling appears to be unsound as a proposition of substantive law.

Furthermore, the requested ruling, even if sound, need not have been given under our practice. It constituted the third sentence of a requested ruling presented as a unit, the first two sentences of which, as the opinion does not deny, were properly refused. The rule always has been that a judge is not required to extract from a requested ruling, presented as a unit and as such properly refused, some sound fragment, and to give that. *Aste* v. *Putnam's Hotel Co.* 247 Mass. 147, 152. *Palmer* v. *Holland,* 51 N. Y. 416, 423, 424. The doctrine of *Bergeron* v. *Forest,* 233 Mass. 392, 402, relied on in the opinion, is a consequence of the duty of a judge to charge the jury upon important issues even with-

out request (*Page* v. *Pattee,* 6 Mass. 459; *Brick* v. *Bosworth,* 162 Mass. 334, 338), and should not be extended to trials without jury. "The only obligation of a judge in an action at law is to pass upon pertinent requests for rulings of law seasonably presented and to decide the case." *Davis* v. *Boston Elevated Railway,* 235 Mass. 482, 494, 495.

That third sentence, moreover, if treated as a separate unit by itself, did not construe the policy, but related to the mental operations of the judge in performing his strictly judicial function of construing the policy. It is indistinguishable from the first two sentences in this respect. The judge could not have been required, if indeed he could have been permitted, to charge a jury in the language of that third sentence, any more than he could have been required to state to a jury many other canons of construction. Consequently when he himself is substituted for the jury, he cannot be required in his strictly judicial capacity to lay down any such proposition, for even if sound it could be no guide to himself as the tribunal of fact. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 18. See also *Clarke* v. *Second National Bank,* 177 Mass. 257, 264. The tribunal of fact should be told what a written instrument means, not the method of reasoning by which its meaning may be determined.

If there was error in the decision of this case by the trial judge, it was error of fact, with which no appellate court can concern itself in an action at law. *Graustein* v. *H. P. Hood & Sons, Inc.* 293 Mass. 207, 216. *McCaughn* v. *Real Estate Land Title & Trust Co.* 297 U. S. 606, 608. This case appears to belong in the proverbial class of hard cases.