FRANK F. BOSS *vs.* THE TRAVELERS INSURANCE COMPANY.

Worcester.   September 23, 1936. — November 9, 1936.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Insurance,* Disability.   *Practice, Civil,* Ordering verdict.

A general motion, that a verdict be ordered for the defendant in an action with a declaration in a single count seeking to recover two amounts, one under each of two provisions of a policy of insurance, properly was denied where the evidence warranted a verdict for the plaintiff under one of the provisions.

Evidence, that a piano mover forty years of age, whose occupation required hard manual labor at which he had been engaged since he was fourteen years of age and who was not fitted for any other kind of work, by reason of an accident preventing him from working as a piano mover was also prevented as a practical matter from doing any kind of work at which he would have a substantial earning capacity, warranted a finding that he was "wholly . . . disabled . . . from engaging in any occupation or employment for wage or profit" within the provisions of a policy of disability insurance.

CONTRACT. Writ in the Superior Court dated April 2, 1932.

The action was tried before *Donnelly,* J., upon a substitute declaration setting forth in a single count a claim for $720 based on allegations that an injury to the plaintiff within the terms of a policy of accident insurance wholly and continuously disabled him from performing any and every kind of duty pertaining to his occupation for fifty-two weeks and that thereafter to the date of the writ he was wholly and continuously disabled from engaging in any occupation or employment for profit. There was a verdict for the plaintiff in the sum of $889.80. The defendant alleged exceptions.

*C. C. Milton,* for the defendant.

*E. Burwick,* (*Nunziato Fusaro* with him,) for the plaintiff.

LUMMUS, J. This is an action to recover disability benefits under a policy of accident insurance which insured the plaintiff, "by occupation a Foreman Piano Mover against loss resulting from bodily injury caused during the term of this Policy directly and exclusively of all other causes by accidental means, as specified in the following Schedule, subject to the provisions and limitations hereinafter contained." The weekly indemnity specified in the policy amounts to $18. The questions in this case arise under Part B of the Schedule of Indemnities of the policy, which appears in a footnote.*

---

* Part B.   Total and Partial Disability — Single Indemnity.

Total Disability I.   Or, if such injury independently and exclusively of all other causes shall wholly and continuously disable the Insured from date of accident from performing any and every kind of duty pertaining to his occupation, the Company will pay weekly indemnity at the rate hereinbefore specified for the period of such continuous total disability, but not exceeding fifty-two (52) consecutive weeks. After the payment of weekly indemnity for fifty-two (52) weeks as aforesaid the Company will continue weekly pay-

A reading of Part B, Paragraph I, shows that two different kinds of total disability are covered, (a) disability to perform "any and every kind of duty pertaining to his occupation" of "foreman piano mover," indemnity for which is limited to one year, and (b) disability to engage in "any occupation or employment for wage or profit," indemnity for which is without limit of time. Partial disability, which "wholly prevents the Insured from performing one or more important daily duties of his occupation" of "foreman piano mover," entitles him to a less amount of indemnity limited to six months.

There was evidence that on January 3, 1931, while the plaintiff was in a moving truck, steadying an old-fashioned square piano that stood on its edge, a skidding of the truck caused the piano to fall upon him, producing serious injuries. Payment was made by the defendant insurer at the rate of $18 a week for total disability, until June 28, 1931, when the defendant contended that the plaintiff was able to resume his regular occupation. The plaintiff claims the weekly indemnity of $18 (1) for total disability to perform "any and every kind of duty pertaining to his occupation" of "foreman piano mover" from June 28, 1931, to the expiration of the year on January 3, 1932, and (2) for total disability to engage in "any occupation or employment for wage or profit" from the last date until the date of the writ on April 2, 1932. The jury returned a verdict for the plaintiff for $889.80, substantially the entire amount claimed with interest from the date of the writ. No question of partial disability is raised, for it is apparent that the verdict was based on total disability for the entire period from June 28, 1931, to April 2, 1932. The defendant alleged exceptions.

---

ments of the same amount thereafter so long as the Insured shall be wholly and continuously disabled by such bodily injury from engaging in any occupation or employment for wage or profit.

Partial Disability II. Or, if such injury from the time of the accident or from and immediately following the period of total disability as hereinabove defined, directly and exclusively of all other causes, continuously and wholly prevents the Insured from performing one or more important daily duties of his occupation, the Company will pay per week during the period of such partial disability but not for more than twenty-six consecutive weeks, two-fifths of the amount payable per week for total disability.

There was evidence for the plaintiff tending to prove the following facts. The work of a foreman piano mover is hard manual labor, like that of the men under him. The foreman is merely the head of the gang. Until April 2, 1932, the plaintiff suffered pains in the neck, back and legs; if he tried to do anything he became tired; he could walk for about ten or fifteen minutes and then would have to sit down or lie down; his legs were shaky and weak when he walked up or down stairs; his weight was about one hundred twenty pounds, whereas before the accident he weighed twenty-five or thirty pounds more; he could not ride on a truck because the jarring of the truck would cause pains in the back. The plaintiff "testified that he could not do any work." A physician who examined the plaintiff on August 10, 1931, and treated him until April 2, 1932, when asked if the plaintiff was "at any time able to perform any kind of work," testified that "he was totally disabled," and that his disability was continuous. On cross-examination the physician testified that by saying that the plaintiff was totally disabled he meant that "he could not do any kind of work that required the use of his back or standing on his feet all of the time"; he could act as a watchman or a bench worker where he could sit down part of the time, without doing any lifting or much walking; but he could not move pianos or furniture, which would require the use of his back. Another physician testified for the plaintiff that "if he could do any type of work it must be a very selective type."

One physician called by the defendant testified that on June 6, 1931, "the plaintiff was in fit condition to resume work, excluding heavy work; that he thought he could have done moderate light lifting." Another testified that "as far as the back was concerned, he [the plaintiff] could do any kind of work that he had done before; that he understood he was a foreman piano mover and it was his opinion that he could do any work that would be required in that sort of work."

At the end of the evidence, the defendant moved for a directed verdict in its favor. It excepted to the denial of

its motion. The general motion for a directed verdict was properly denied if any verdict for the plaintiff for any amount was warranted by the evidence. The evidence just recited shows at least foundation for a verdict in favor of the plaintiff for the period before January 3, 1932, on the ground that he was wholly disabled to perform "any and every kind of duty pertaining to his occupation" of "foreman piano mover." The fourth request is covered by what has been said.

The sixth request was as follows: "On the evidence the jury would not be justified on any evidence in the case in finding that the plaintiff at any time from and after June 28, 1931, was wholly and continuously disabled by the bodily injury of January 3, 1931, from engaging in any occupation or employment for wage or profit." The first request covers much the same ground. In *Rezendes* v. *Prudential Ins. Co.* 285 Mass. 505, 511, it was said, "The disability of an insured who still retains the power to do some work may be within the policy definition if he is 'wholly and continuously unable' to do any work of such character that he can receive therefor any financial compensation." On page 513, it was said, "We think that it is a fair and reasonable construction of the language of the policy, consistent with the purposes of the insurance contract . . . to hold that under his policy the insured is entitled to disability benefits if his condition in fact is such that he is unable to work without running the risk of increasing his disability or of shortening his life." In *Adamaitis* v. *Metropolitan Life Ins. Co.* 295 Mass. 215, 219, it was said, "Complete physical or mental incapacity of the insured . . . is not essential to his total disability within the meaning of the contract of insurance. It is sufficient that his disability is such that it prevents him from performing remunerative work of a substantial and not merely trifling character. . . . Total disability is relative. It does not depend wholly on physical condition." In *Duhaime* v. *Prudential Ins. Co.* 86 N. H. 307, 308–309, it was said, "It is self-evident that an injury which might

reduce an illiterate laboring man to a condition whereby he could only earn his living by begging, might not in any wise impair the earning power of a business or professional man. Regard must be had to the insured, to his age, education, experience, training and capabilities. The insurer cannot avoid the payment of benefits because theoretically the insured could educate himself for some non-manual employment." The plaintiff need not prove that he could not do any of the work of any occupation or employment. "Engaging in" an "occupation or employment for wage or profit" imports a continuing earning capacity upon which one can rely to a substantial degree for a livelihood. Many authorities lay down a rule still more favorable to the insured, but the present case does not require us to consider them. *Plummer* v. *Metropolitan Life Ins. Co.* 132 Maine, 220. *Atlantic Life Ins. Co.* v. *Worley*, 161 Va. 951. *Janney* v. *Scranton Life Ins. Co.* 315 Penn. St. 200. *Aetna Life Ins. Co.* v. *Davis*, 187 Ark. 398. *Prudential Ins. Co.* v. *South*, 179 Ga. 653; 98 Am. L. R. 781, and note.

We think that the verdict for the plaintiff was supported by the evidence, even to the extent that the verdict rested solely upon total disability to engage in "any occupation or employment for wage or profit." He is a man of forty, who has been engaged in hard manual labor since he was fourteen. The jury saw him. Nothing in the record suggests that he had any fitness for any other kind of work. The jury might find that there was no "occupation or employment" worthy of the name in which as a practical matter the plaintiff in his physical condition could "engage" for "wage or profit." *Sullivan's Case*, 218 Mass. 141. *Duprey's Case*, 219 Mass. 189, 193. *Sheppard's Case*, 287 Mass. 459, 464. *Fennell's Case*, 289 Mass. 89, 94. *Adamaitis* v. *Metropolitan Life Ins. Co.* 295 Mass. 215, 220–221.

Exceptions to the alleged refusal to give other requested instructions have been argued, but we think that the requested instructions were given in substance. Although the judge did not repeat every limitation upon recovery

every time he mentioned the right to recover, we think that the instructions as a whole conveyed to the jury a correct idea of the law.

*Exceptions overruled.*