USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 97-1275

 ROBERT DOYLE,

 Plaintiff, Appellee,

 v.

 THE PAUL REVERE LIFE INSURANCE COMPANY,

 Defendant, Appellant.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Patti B. Saris, U.S. District Judge]

 ____________________

 Before

 Stahl, Circuit Judge,

 Aldrich and Coffin, Senior Circuit Judges.

 ____________________

 Joseph M. Hamilton with whom Mirick, O'Connell, DeMallie & Lougeewas on brief for appellant.
 Mark T. Collins for appellee.

 ____________________

 June 2, 1998
 ____________________
 ALDRICH, Senior Circuit Judge. Plaintiff-appellee
 Robert Doyle, as an engineer at Textron, Inc., was insured for
 long term total disability benefits under a group policy issued
 to Textron by defendant-appellant Paul Revere Life Insurance
 Company (Paul Revere) pursuant to an employee welfare benefit
 plan. The plan is subject to the Employee Retirement and
 Income Security Act (ERISA), 29 U.S.C. 1001, et seq.; the
 policy was managed by Paul Revere. After Doyle ceased work in
 December 1989, he applied for and received interim benefits. 
 Paul Revere discontinued them on March 27, 1991 when it found
 him not totally disabled, and therefore ineligible, and it
 rejected his later appeal. The principal issue here is whether
 the district court erred in denying Paul Revere's motion for
 summary judgment and, instead, entering summary judgment for
 Doyle. We reverse.
 Review
 We review the district court's grant of summary
 judgment de novo. See Grenier v. Cyanamid Plastics, Inc., 70
 F.3d 667, 671 (1st Cir. 1995); Allen v. Adage, Inc., 967 F.2d
 695, 699 (1st Cir. 1992). Our first question is Paul Revere's
 authority to determine eligibility. The parties agree that it
 had discretion. Normally this means that its decision must be
 upheld unless "arbitrary, capricious, or an abuse of
 discretion." Diaz v. Seafarers Int'l Union, 13 F.3d 454, 456
 (1st Cir. 1994); see also Firestone Tire & Rubber Co. v. Bruch,
 489 U.S. 101, 111-15 (1989); Recupero v. New England Tel. &
 Tel. Co., 118 F.3d 820, 828 (1st Cir. 1997). This standard
 means that its decision will be upheld if it was within Paul
 Revere's authority, reasoned, and "supported by substantial
 evidence in the record." Associated Fisheries of Maine, Inc.v. Daley, 127 F.3d 104, 109 (1st Cir. 1997) (Administrative
 Procedure Act). Substantial evidence, in turn, means evidence
 reasonably sufficient to support a conclusion. Sufficiency, of
 course, does not disappear merely by reason of contradictory
 evidence. See Sprague v. Director, O.W.C.P., 688 F.2d 862,
 865-66 (1st Cir. 1982); see also Sandoval v. Aetna Life & Cas.
 Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992); Jett v. Blue
 Cross & Blue Shield of Alabama, Inc., 890 F.2d 1137, 1140 (11thCir. 1989).
 This deferential standard may not be warranted,
 however, when a conflict of interest exists, such as when the
 policy manager has a personal interest contrary to the
 beneficiary's. In this case, any award of benefits would come
 out of Paul Revere's own pocket. Plaintiff notes, also, that
 Paul Revere was a Textron subsidiary. However, here we suggest
 an important competing motive: having a benefit plan is to
 please employees, not to result in the employer's bad
 reputation. See Van Boxel v. Journal Co. Employees' Pension
 Trust, 836 F.2d 1048, 1051 (7th Cir. 1987). Indeed, we venture
 that an employer would not want to keep an overly tight-fisted
 insurer. The conflict is not as serious as might appear at
 first blush.
 The question comes as to how this should be handled. 
 The circuits have varied from giving the manager no deference,
 see Armstrong v. Aetna Life Ins. Co., 128 F.3d 1263, 1265 (8thCir. 1997) (2-1 decision; reh'g and suggestion for reh'g en
 banc denied), to shifting the burden of exoneration to the
 insurer, see Brown v. Blue Cross & Blue Shield of Alabama, 898
 F.2d 1556, 1566 (11th Cir. 1990), cert. denied, 498 U.S. 1040
 (1991), to applying a sliding scale involving "careful judicial
 scrutiny to make sure the[] action was reasonable," Van Boxel,
 836 F.2d at 1053.
 There are advantages in having a simple procedure, cf.Sandoval, 967 F.2d at 380, which the Armstrong approach
 forecloses despite the parties' agreement to accept the
 insurer's discretion. The Massachusetts district court has
 prophesied that in case of conflict our court would merely
 "giv[e] 'more bite' to the arbitrary and capricious standard." 
 Doe v. Travelers Ins. Co., 971 F. Supp. 623, 630 (D. Mass.
 1997). We so do, interpreting "more bite" as adhering to the
 arbitrary and capricious principle, with special emphasis on
 reasonableness, but with the burden on the claimant to show
 that the decision was improperly motivated. Cf. Sullivan v.
 LTV Aerospace & Defense Co., 82 F.3d 1251, 1255 (2d Cir. 1996). 
 To do more would sacrifice the advantages of the offered
 arrangement. Doyle has made no showing except to point out the
 subsidiary relationship and the fact that Paul Revere decided
 which claims it would pay, which is not enough.
 This leaves our question not which side we believe is
 right, but whether Paul Revere had substantial evidentiary
 grounds for a reasonable decision in its favor. We first
 review the policy, and after, the evidence.
 The Policy
 An employee is eligible for benefits under the policy
 if "totally disabled from any occupation."
 Totally disabled from any occupation, or total
 disability from any occupation means:
 
 1. because of injury or sickness, the
 employee is completely prevented from
 engaging in any occupation for which he
 is or may become suited by education,
 training or experience . . . .
 (emphasis added).
 
 We, of course, agree that such "'general' disability provisions
 should not be construed so literally that an individual must be
 utterly helpless to be considered disabled." Hammond v.
 Fidelity & Guar. Life Ins. Co., 965 F.2d 428, 431 (7th Cir.
 1992). How far from that has been variously, and perhaps even
 irreconcilably, described. See, e.g., id. (unable to "perform
 all the substantial and material acts necessary to the
 prosecution of some gainful business or occupation");
 Vanderklok v. Provident Life & Accident Ins. Co., 956 F.2d 610,
 615 (6th Cir. 1992) (unable to "pursue 'gainful employment in
 light of all the circumstances.'" (citation omitted)); Torix v.
 Ball Corp., 862 F.2d 1428, 1431 (10th Cir. 1988) ("inability to
 follow any occupation from which [the claimant] can earn a
 reasonably substantial income rising to the dignity of an
 income or livelihood"); Helms v. Monsanto Co., 728 F.2d 1416,
 1420 (11th Cir. 1984) (same); Boss v. Travelers Inc., 4 N.E.2d
 468, 296 Mass. 18, 22 (1936) (unable to "perform[] remunerative
 work of a substantial and not merely trifling character"
 (quotations and citation omitted)). In addition to "totally
 disabled," we note the policy reads "completely prevented," a
 further emphasis. Within reason, Paul Revere's discretionary
 power includes not only factual findings as to plaintiff's
 condition, but interpretation of policy terms. See Allen, 967
 F.3d at 697; cf. Marecek v. BellSouth Servs., Inc., 49 F.3d
 702, 705 (11th Cir. 1995).
 The Evidence
 In favor of Paul Revere is the following. Paul Revere
 sent Doyle to a neurosurgeon, Dr. Bruce Cook, in October 1990
 for an Independent Medical Examination. It provided Dr. Cook
 with medical information from its files and a description of
 Doyle's job, and also asked Doyle to provide Dr. Cook with "any
 other information that pertains to your condition." Asked to
 determine Doyle's medical restrictions and assess their effect
 on his ability to do his job at Textron, Dr. Cook said, "I do
 not think that the mild residual myelopathy impairs him from
 either the written or verbal description that I was given." 
 Acknowledging Doyle's "pain syndrome," he offered that
 treatment should focus on adjusting Doyle's physical position
 at work to reduce strain on his neck, and he recommended
 supervision by an occupational therapist. He concluded, "His
 restrictions in work would be predominantly in the physical
 realm where he should not do any lifting, bending or stretching
 and should be able to change positions on a frequent basis."
 Apparently on Dr. Cook's advice, Paul Revere had Doyle
 meet with Brian Delahanty, a rehabilitation consultant, in
 January 1991. Delahanty had information about Doyle's previous
 work history, education (college degrees in engineering and
 business management), medical history, and "expressed current
 functioning levels." Delahanty concluded that, although Doyle
 was pessimistic, "Various job modifications are available that
 would allow Mr. Doyle to perform computer related employment
 utilizing his engineering skills," and he contemplated Doyle
 returning to work at Textron in a modified position.
 On Delahanty's recommendation, Paul Revere had Doyle
 undergo a Physical Capacity Evaluation in February 1991 at the
 New England Rehabilitation Center of Southern New Hampshire
 (NERC). A physical therapist and an occupational therapist,
 asked to determine his ability to do his former job, assessed
 Doyle over the course of three hours. Among other details,
 they documented his expressed functional tolerances: 30-60
 minutes for sitting (45 observed); 10 minutes for standing (15
 observed); one third mile for walking; 15 miles for driving;
 and 15-20 miles for car riding. After describing other
 limitations, many due to pain, they concluded that Doyle had a
 "sedentary work capacity" at that time and recommended a
 "comprehensive pain program" involving various therapies in
 order to "facilitate a gradual return to work" in his former
 position. They also recommended that Doyle have a "job site
 visit to alter or adjust the environment to facilitate proper
 body positioning thus decreasing [his] pain and allowing [him]
 to return to work part time."
 Following up the NERC report, Delahanty contacted Doyle
 to discuss work and rehabilitation options, including the
 recommended "pain program." (Paul Revere previously had agreed
 to continue benefits for six months while Doyle participated in
 rehabilitation.) Doyle repeatedly expressed resolute pessimism
 as to his ability to work or even to attempt rehabilitation. 
 Although it is true, as Doyle said much later, that he never
 expressly declined it, both Delahanty and Paul Revere
 understood him to refuse to participate. The record, on the
 whole, supports them. Although the policy did not require Paul
 Revere to rehabilitate Doyle, its willingness to do so bolsters
 its overall reasonableness.
 On the basis of this evidence, Paul Revere found Doyle
 not totally disabled and discontinued benefits in March 1991. 
 We accept that the evidence sufficiently supports the
 conclusion that Doyle, fifty-four years old, college educated
 in both engineering and business management, and most recently
 working as a senior engineer for a major defense contractor,
 was not "totally disabled from any occupation" because he
 retained a "sedentary" work capacity and a potential for
 further rehabilitation that Paul Revere was willing to pursue
 with a combination of jobsite restructuring, further therapy,
 and decreased hours. That his capacity, initially at least,
 may have been limited to part-time work does not require
 concluding otherwise. Cf. August v. Offices Unlimited, Inc.,
 981 F.2d 576, 582 (1st Cir. 1992) (implying that total
 disability means inability to work either part-time or full-
 time); Marecek, 49 F.3d at 705 (finding that part-time work
 capacity precluded total disability status); Simari's Case, 414
 N.E.2d 629 (Mass. App. Ct. 1981) (workmen's compensation)
 (noting that one who was capable of "light part-time sedentary
 work" and who could, with treatment, resume full-time work was
 not permanently and totally disabled).
 Conclusion
 The collection of conflicting expert opinions is on the
 whole equivocal, the fault of Paul Revere, whose practice was
 to ask about limitations on claimant's ability to do his
 present job, not "any occupation." Nevertheless, we believe we
 have recited an ample basis within a reasonable interpretation
 of the policy terms. One interesting circumstance is the
 opinions, given prior to termination of benefits, in which Dr.
 Donald Pettit (Doyle's treating physician) maintained the
 totality of Doyle's disability, coupled with assurances that he
 saw no hope for the future, contrasted with his finding in
 September 1993 effectively conceding at least half-time work
 capacity. It is true, of course, that Paul Revere did not have
 the latter information in March 1991, and that this described
 Doyle's condition two and a half years later, but, by
 confirming, it does lend color to the earlier appraisals relied
 upon by Paul Revere.
 It is a matter of judgment, but we have given much
 thought to the record appertaining to Doyle's submissions
 before termination of benefits in March 1991, including the
 careful opinion of the district court, as to which, however,
 see Review, supra, and we conclude in favor of defendant. Paul
 Revere's denial was reasonably supported by substantial
 evidence. The court erred by not granting summary judgment on
 Count I in its favor. This, automatically, ends the case for
 later years. 
 The summary judgment for Doyle is reversed; judgment to
 be ordered for Paul Revere.
 
 - Dissent follows -
 COFFIN, Senior Circuit Judge, dissenting. My problem
 with the court's resolution lies not in its choice of standard
 of review but in its reading of the evidence from which it
 concludes that "Paul Revere's denial was reasonably supported
 by substantial evidence."
 I begin with the court's reading of the report of Dr.
 Cook, a neurosurgeon. The essence of the doctor's conclusions
 is the following:
 It is my feeling that the decompressive
 surgery in his neck has been successful in
 relieving pressure of the spinal cord and
 allowing a partial though incomplete recovery
 of spinal cord function. Mr. Doyle now has a
 chronic pain problem associated with
 immobility in the neck. I do not think that
 the mild residual myelopathy impairs him from
 either the written or verbal description that
 I was given. I think that his disability
 centers around a chronic pain syndrome. The
 only measurable aspect of this is the
 associated immobility in the neck which is
 rather severe and detailed above. I do not
 think that any further testing is required to
 better elucidate the problem.
 
 The various positions required of Mr.
 Doyle in order to perform his work, especially
 at the computer terminal, seem to exacerbate
 the pain that he has been having and, by his
 description, have made work intolerable to
 him. I think that any attempt at treatment
 would have to revolve around addressing these
 issues and seeing if there is any adjustment
 that can be made in his position of work to
 diminish the strain on the neck.
 
 Appendix p. 127. My reading of these conclusions is that (1)
 Doyle has two sources of disability: residual myelopathy [or
 constriction of the spinal cord] and chronic pain syndrome; (2)
 the former does not impair him from the written or verbal
 description of his work; (3) but his disability "centers around
 a chronic pain syndrome," of which a measurable aspect was his
 rather severe neck immobility; and (4) any treatment would have
 to address the pain problem and see if any adjustment in work
 position can diminish the strain on his neck.
 The court, in my view, downplays the impact of pain by
 saying that the pain syndrome was acknowledged, rather than
 that Doyle's disability "centers" around it. The doctor's
 conclusion based on the residual myelopathy is not a conclusion
 as to his total disability. In addition, I read the doctor's
 recommendations as to treatment as essential steps to the
 diminishment of pain, the center of his disability. I further
 see no suggestion in the record that the doctor, or in fact any
 other doctor, felt that Doyle was fabricating or exaggerating
 his pain. Dr. Cook's conclusion that work restrictions would
 be in the realm of lifting, etc., was necessarily contingent on
 the amelioration of pain.
 I also have a different understanding of what
 rehabilitation consultant Delahanty said in his first letter in
 January, 1991. Doyle, he acknowledged, had been "an outstanding
 employee." He also wrote that Doyle "present[ed]" to him "an
 extremely disabled state with limited insight as to returning
 to competitive employment." Delahanty passed no present
 judgment on Doyle's disability. Delahanty recognized that all
 his information had come from Doyle and that a Physical
 Capacities Evaluation was needed to establish "some base line
 functionary levels."
 In other words, I read Delahanty's conclusion that
 "various job modifications are available . . ." to depend on
 some ascertainment of what Doyle could really do. I see
 nothing to suggest that Delahanty "contemplated Doyle returning
 to work at Textron in a modified position" in the sense that he
 thought Doyle was at that time able to return to work.
 The third piece of evidence relied on by the court was
 the Physical Capacity Evaluation of the New England
 Rehabilitation Center. After stating that, during the three-
 hour evaluation, Doyle "was limited in his activities due to
 poor endurance, pain, pain behaviors and decreased tolerance,"
 its concluding paragraph stated:
 At this time, [patient] presents with a
 sedentary work capacity. To facilitate a
 gradual return to work, [patient] may benefit
 from a comprehensive pain program involving 
 Psychology, Occupational Therapy, Physical
 Therapy and Biofeedback for symptom control,
 pain management strategies and reeducation as
 well as to increase functional status. If
 [patient] were to do well with the above, it
 is recommended that [patient] have a job site
 visit to alter or adjust the environment to
 facilitate proper body positioning thus
 decreasing [patient's] pain and allowing
 [patient] to return to work part time.
 
 Appendix p. 168.
 
 The court's summary gave, in my view, short shrift to
 the report of pain, with no suggestion of contrivance on the
 part of Doyle, and again overlooked the conditional nature of
 the Center's assessment of "a sedentary work capacity." The
 "comprehensive pain program" was not merely to facilitate a
 "gradual return to work" in the sense of easing the return, but
 its success was a precondition. "If [patient] were to do well
 with the above," then a job site visit to help body positioning
 would be the next step to "decreas[e] [patient's] pain and
 allow[] [patient] to return to work part time."
 My reading of these three reports supports the
 conclusion that Doyle's spinal cord was not damaged such that
 it constituted a barrier to his being able to do part time,
 sedentary work of a nature suited to his background. But there
 was no discounting of the obstacle of pain as a barrier which
 would have to be surmounted. A comprehensive many-faceted pain
 program involving psychology, therapy, pain management
 strategies, and reeducation was recommended. Only if this had
 some success was even a return to part time work envisaged. 
 This, in my opinion, is not substantial evidence supporting
 Paul Revere's denial.
 I would add two other pieces of evidence bearing on
 arbitrariness, or failure to act rationally. On March 27,
 1991, the rehabilitation consultant Delahanty wrote Paul Revere
 about discussing with Doyle the possibility of pursuing the
 Center's recommendation of what he referred to as "therapeutic
 options, including work hardening." He reported Doyle's
 statement that his physician felt that he was "not a vocational
 rehabilitation candidate," and that "it would be necessary for
 him to further discuss with his physician the possibility of
 any therapeutic options . . . ."
 Notwithstanding this statement, the consultant made no
 recommendation to follow up the Center's suggestion or in any
 other way to address the pain problem. On the same day that
 Delahanty made his written report, Paul Revere wrote its letter
 denying Long Term Disability Benefits. There was no mention of
 discussing the details of a comprehensive pain program with
 Doyle's treating physician. It referred to the reports of both
 Dr. Cook and the Center as "support[ing] your ability to perform
 sedentary work," with no mention of a precondition that the pain
 barrier must first be surmounted.
 I make one final observation. I recognize, as does the
 court in its footnote 4, that Social Security Administration
 awards of disability benefits based on an inability to engage
 in substantial gainful employment are not of binding effect on
 disability insurers. But, in Doyle's Social Security decision,
 the evidence of his "non-exertional limitations" (i.e., pain-
 related limitations) was found to trump what would otherwise be
 a capacity to engage in sedentary work. It was consistent with
 and supportive of my reading of the Cook and Center reports. 
 Ignoring it in this case seems to me another indication of
 arbitrariness.
 If indeed the court's conclusion, affirming the denial
 of benefits, is commanded by law, an insurer may not only
 choose between doctors but may selectively read medical reports
 from the same doctors or evaluators, selecting those parts
 which support its action and ignoring those which do not. If
 this can be equated with "substantial evidence," I think that
 the administration of total disability policies is very
 substantially review-free.
 I respectfully dissent.