Fecteau, Francis R., J.
INTRODUCTION
Plaintiff, Donald Gorsuch (“Gorsuch”), brought this complaint against defendant, The Paul Revere Life Insurance Company (“Paul Revere”) alleging breach of contract and violations of G.L.c. 93A. Specifically, Gorsuch asserts that he is entitled to total disability payments under the insurance policy (“the Policy”) he had with Paul Revere and that its payments of residual disability only constituted a breach of contract. Paul Revere argues that Gorsuch is only qualified to receive residual disability under the Policy, and therefore, it is not in breach of contract. For the following reasons, defendant’s motion and plaintiffs cross motion are both DENIED.
BACKGROUND
On or about November 28,1990, Paul Revere issued a disability income insurance policy to Gorsuch. Under the Policy, an insured was entitled to “total disability” payments if, due to injury or sickness:
a.He is unable to perform the material and substantial duties of [his] Occupation; and
b.He is under the regular and personal care of a Physician.
(Emphasis added.)
On the other hand, an insured qualified for “residual disability” when, due to injury or sickness:
a. (1) [He is] unable to perform one or more of the important duties of [his] Occupation; or (2) [He is] unable to perform the important duties of [his] Occupation for more than 80% of the time normally required to perform them; and
b. [His] Loss of Earnings is equal to at least 20% of [his] Prior Earnings while [he] was engaged in [his] Occupation or another occupation; and
c. [He is] under the regular and personal care of a Physician.
(Emphasis added.)
Gorsuch was diagnosed with hypertension and coronary artery disease on or about May 4, 1998. On March 16, 1999, Gorsuch filed a claim with Paul Revere seeking disability payments under the Policy. In the claim, he asserted that his heart condition was negatively impacting his ability to perform the duties of his occupation as President and CEO of Greenfield Medical Products, Inc. (“Greenfield”). In sum, Gorsuch stated he could no longer work for 80 or more hours as an entrepreneurial start-up business developer for Greenfield, a company in which he had a 92% ownership interest. In 1999, Greenfield filed for bankruptcy, but Gorsuch continued to work for his wife’s business, Greenfield Medical Sourcing (“GMS”),[2] doing the-rmoforming of film development tanks, some product assembly, and performing financial and accounting services. Gorsuch reported to Paul Revere that he worked as GMS’s Vice President from October 1999 to Februaiy 28, 2001, but that he had earned only $10,000 per year.
In March 2001, being offered and accepting a job with Systems & Processes Engineering Corporation (“SPEC”), Gorsuch moved to Texas. At SPEC, Gorsuch acted as Director of Business Ventures and CEO of its Omnisite Biodiagnostics Group and reported to Paul Revere that he was earning $11,000 per month. Over time, Gorsuch also became the Vice President of Commercial Operations and program leader on specific projects at SPEC. At that time, he reported to Paul Revere that he was working approximately 33-35 hours for SPEC and 3-5 hours for GMS.
After investigating Gorsuch’s disability claim, Paul Revere determined that he was only entitled to receive residual disability payments. In its vocational rehabilitation evaluation, Paul Revere determined that all the duties Gorsuch performed at SPEC were the same duties that Gorsuch reported he performed while working as Greenfield’s CEO. By letter dated January 28, 2000, Paul Revere informed Gorsuch that because he was working in his occupation in a limited capacity, he did not qualify for total disability, but instead, *138 would receive residual disability payments as defined under the Policy.
DISCUSSION
I. Summaiy Judgment Standard
Summaiy judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summaiy judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The non-moving party cannot conjure up genuine issues of material fact or merely rely on the allegations or denials of her pleading. See Mass.R.Civ.P. 56(e). Conclusoiy statements, general denials, and allegations not based on personal knowledge are insufficient to avoid smnmaiy judgment. Madsen v. Erwin, 395 Mass. 715, 721 (1985). Rather, the non-moving party bears the burden of introducing enough countervailing data to demonstrate the existence of a genuine issue for trial. See Wooster v. Abdow Corp., 46 Mass.App.Ct. 665, 673 (1999).
II. The Insurance Contract
In Massachusetts, an insured is considered totally disabled when “his disability is such that it prevents him from performing remunerative work [in his occupation] of a substantial and not merely trifling character.” Norwell v. Hartford Accident and Indem. Co., 358 Mass. 575, 578 (1971), quoting Zakon v. Met. Life Ins. Co., 328 Mass. 486, 489-90 (1952); Adamaitis v. Met Life Ins. Co., 295 Mass. 215, 219 (1936). It is not necessary that an insured be completely physically or mentally incapacitated to receive total disability under an insurance contract. Adamaitis, 295 Mass. at 219. Instead, whether the insured could engage in an occupation in the “continuing earning capacity upon which [he] could rely to a substantial degree for a livelihood” must be considered. Boss v. Travelers Ins. Co., 296 Mass. 18, 23 (1936).
Moreover, a comparison of the work the insured was fit to perform before and after his disability occurred is left for the juiy to examine. Id. (“[t]he jury might find that there was no ‘occupation or employment’ worthy of the name in which as a practical matter the plaintiff in his physical condition could ‘engage’ for ‘wage or profit,’ ” quoting Sullivan’s Case, 218 Mass. 141 (1914) (and cases cited)). Therefore, how the insured’s duties change with regard to his occupation after disability ensues is “material for consideration by the trier of fact in determining whether the plaintiff was totally disabled within the meaning of the insurance contract.” Adamaitis, 295 Mass. at 220.
When interpreting insurance contracts, “eveiy word and phrase, must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable.” Wrobel v. General Accident, Fire & Life Assurance Corp., 288 Mass. 206, 209-10 (1934). Additionally, “where the words of an insurance contract are ‘plain and free from ambiguity they must be construed in their usual and ordinaiy sense.’ ” Jacobs v. United States Fidelity & Guaranty Co., 417 Mass. 75, 77 (1994), quoting Hanover Ins. Co. v. Ramsey, 405 Mass. 1101, 1101 (1989). If the language of an insurance policy is ambiguous, and “there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to [him].” Hazen Paper Co. v. United States Fidelity & Guaranty Co., 407 Mass. 689, 700 (1990).
After careful review of the record, the court finds that genuine issues of material fact exist to preclude summaiy judgment in Paul Revere’s favor. Although the court agrees that the terms “total disability” and “residual disability” cannot be equivocal in meaning insofar as the Policy carved out separate provisions therefor, this assertion alone is not enough per se to allow summaiy judgment. Instead, whether Gorsuch was able to perform the “material and substantial duties” of his occupation is a matter of degree necessitating a factual determination of the qualitative (i.e., “material") and quantitative (i.e., “substantial”) nature in which he worked before and after he became disabled, a comparison of those abilities and duties and the extent to which his occupation is the same, or different, to that which he had at the time of the origin of his disability. The record shows that Gorsuch continued to work in a very limited capacity as Greenfield’s CEO after he was diagnosed with heart disease and before Greenfield filed for bankruptcy. Moreover, his earnings thereafter while working at GMS indicate that the quality of the life he once had as Greenfield’s CEO/entrepreneur was drastically reduced from February 1999 through March 2001, making a mere $10,000 per year. At first blush, this evidence indicates that Gorsuch was no longer able to pursue an occupation that would have provided him with a “continuing earning capacity upon which [he] could rely to a substantial degree for a livelihood.” Boss, 296 Mass. at 23.
Additionally, that Gorsuch later obtained employment with and eventually held leadership positions with SPEC is also not enough for Paul Revere to prevail at this stage, as a matter of law, upon its assertion that the tasks he performed there were sufficiently synonymous with his prior duties as Greenfield’s entrepreneurial CEO to disqualify him from total disabil *139 ity benefits. Although it appears from the surface of the motion record, that there were aspects similar to descriptions of the occupations and duties Gorsuch performed before and after the onset of his disability, the court cannot simply perform a rough, color-matching exercise to ascertain the degree in which the occupations and the substantial and material duties thereof were the same and then to ascertain the degree to which he was able to perform those duties, without more. An applicant for benefits need not prove that he is bedridden or helpless, physically and mentally. Moreover, a person in the position of this plaintiff is not contractually required to prove that he is unable to retain this or any other employment. However, it is a fair and reasonable interpretation of the words of the contract that if the applicant was able to perform (as opposed to unable to perform) any of the substantial and material duties of that occupation, he would not qualify as totally disabled. See Canney v. Mass. Bonding & Ins. Co., 88 N.H. 325, 329 (1937). The same result appears if the negative and positive qualifiers were reversed, i.e., “able to perform none of the substantial and material duties.” While the record may show that he said that he was able to perform some aspects of one or more of the substantial and material duties of the occupation he had at the relevant times, the record does not demonstrate that he was able to completely perform all of the elements of any one of the substantial and material duties of that occupation, which is, at a minimum, what the defendant would have to be able to prove in order to warrant a judgment in its favor at this stage of the proceedings. Instead, these questions must be reserved for the trier of fact. See Boss v. Travelers Ins. Co., 296 Mass. 18, 23(1936); Adamaitis, 295 Mass. at 220. Gorsuch worked a mere 33-35 hours per week at SPEC; at Greenfield, he worked 80 hours or more when he obtained the Policy with Paul Revere. Despite the significantly reduced hours at SPEC, Gorsuch earned a sizeable income at $11,000 per month. However, the policy definition of total disability does not refer to income earned nor hours of performance of duties, in whole or in part, contrary to that for residual disability. Thus, on the one hand, the jury could conclude that Gorsuch’s prior experience at Greenfield allowed him to perform “one or more of his important duties” more proficiently, thereby significantly reducing his hours but not necessarily his income. On the other hand, the jury could conclude that Gorsuch’s heart condition precluded him from working the hours he was previously able, which thereby prevented him from performing the “material and substantial duties” in the profession in which he was once accustomed, and income notwithstanding. In the former instance, Gorsuch would only be entitled to residual disability under the Policy; in the latter, he would likely be entitled to total disability. Neither scenario so predominates on this record that a judgment for the defendant is compelled as a matter of law. Accordingly, because such factual issues remain for determination and are genuine and material, summaiy judgment for Paul Revere must be denied.
III. G.L.c. 93A
In Massachusetts, G.L.c. 93A makes unlawful any unfair methods of competition and unfair or deceptive acts or practices within any trade or commerce. Id. at §2. “[A] practice or act will be unfair under G.L.c. 93A, §2, if it is (1) within the penumbra of a common law, statutory, or other established concept of fairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.” Morrison v. Toys-(R)-Us, Inc. Massachusetts, 441 Mass. 451, 457 (2004). “The purpose of [chapter 93A] is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace.” Id., citing Poznik v. Massachusetts Prof. Ins. Ass’n., 417 Mass. 48, 53 (1994).
Regarding insurance contracts, “[a] policyholder may have a claim under G.L.c. 93A, §9 . . . for unfair or deceptive acts or practices in the handling of claims for the payment of insurance benefits.” Swanson v. Bankers Life Co., 389 Mass. 345, 348 (1983). Whether the defendant’s conduct qualifies as an “unfair or deceptive act or practice” and thereby within the purview of chapter 93A is a matter of law. See R.W. Granger & Sons, Inc. v. J&S Insulation, Inc., 435 Mass. 66, 73 (2001); Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991). However, “whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact” for the juiy. Schwanbeck v. Federal-Mogul Corp., 31 Mass.App.Ct. 390, 414 (1991). An insurance company may therefore avoid a chapter 93A violation by denying a claim of coverage in good faith based on a plausible interpretation of its own policy. Lumbermens Mutual Casualty Co. v. Offices Unlimited, Inc., 419 Mass. 462, 468 (1995). However, whether the insurance company indeed acted in good faith or in bad faith in dealing with the insured is left to the trier of fact. See id.; Swanson, 389 Mass. at 348 (“[w]hat a defendant knew or should have known may be relevant in determining unfairness . . . and plaintiffs conduct, his knowledge, and what he reasonably should have known may be factors in determining [fairness]”); Schwanbeck, 31 Mass.App.Ct. at 414.
Here, whether Paul Revere violated chapter 93A is a question of fact for the jury. Based on the record, the juiy could find that Paul Revere intentionally drafted the Policy in bad faith to avoid paying Gorsuch total disability benefits. On the other hand, the jury could conclude that Paul Revere investigated the claim in good faith and reasonably interpreted the Policy in light of the duties Gorsuch was able to perform, including the degree in which he routinely executed them. Finally, regardless of whether the jury concludes that Paul Revere breached its contract with Gorsuch, that determination is not dispositive of the *140 chapter 93A claim. See Pepsi Cola Metropolitan Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985) (mere breaches of contract, without more, do not violate chapter 93A). Therefore, summary judgment as to this claim must also be denied.
IV. Plaintiffs Cross Motion
Gorsuch’s cross motion for summary judgment must also be denied. Gorsuch argues that he is entitled to summary judgment because the only medical evidence presented in the record is that of his treating physician, Gerard P. Aurigemma, M.D. (“Dr. Au-rigemma”). In essence, Gorsuch asserts that Paul Revere’s failure to contest Dr. Aurigemma’s diagnosis that Gorsuch will remain disabled indefinitely with countervailing medical expert support entitles him to summary judgment. Gorsuch argues that Paul Revere instead merely relies on its own claims specialist who is not a competent medical expert to rebut Gorsuch’s condition. In addition, Gorsuch argues that the modifiers used by the defendant to interpret whether an applicant met the contract definitions regarding ability to perform his duties within the requirements of “residual disability” and “total disability” are the same, namely, “important duties,” and thus, regardless of his condition, Paul Revere committed unfair and deceptive trade practices in violation of G.L.c. 93A. He relies on the testimony of Paul Revere’s claims specialist, Shelley A. McKieran (MeKieran), who testified that the differing modifiers for the disability categories in the policy were “synonymous” with the word “important.”
Gorsuch’s arguments are unpersuasive. First, he offers no legal support for the argument that Paul Revere must rebut his medical condition and purported permanent disability with medical evidence in kind. Although Dr. Aurigemma’s testimony may be persuasive at trial, it is for the juiy to decide the credibility of witnesses, be they experts or lay persons, and the weight to be accorded to each. Second, there is nothing which prevents Paul Revere from attempting to qualify its claims specialist as a witness who, by specialized education, training and/or experience, may be allowed to offer relevant opinion testimony in areas of competence at trial.
ORDER
For the reasons stated herein, it is hereby ORDERED that Defendant’s Motion for Summary Judgment and Plaintiffs Cross Motion for Summary Judgment brought pursuant to Mass.R.Civ.P. 56 both be DENIED.

GMS purchased Greenfield’s assets prior to Greenfield’s bankruptcy and continued to use Greenfield’s business assets from the same office location.